Aluest, J.
 

 The record contains evidence tending to show the following facts:
 

 The collision occurred at the intersection of Jasper road and the right of way of the railroad. West boulevard intersects Jasper road a short distance west of the crossing, and terminates at that point, so that traffic from West boulevard moving eastward crosses the railroad tracks via Jasper road. The tracks of the railroad at this point extend towards the city of Cleveland in a northeasterly direction, and Jasper road runs east and west, forming a diagonal with the railway tracks. The westerly track is upon the boundary of the city limits of Cleveland. At this point there are five tracks and a switch track of the Big Four Railroad, making in all six tracks at the crossing. At the time of the accident Kuhl was driving east upon Jasper road, and the locomotive which struck his automobile approached the crossing on the first, or westerly track. The locomotive was backing from the Union Station in Cleveland to Linndale. Evidence was given by two witnesses familiar with the crossing that there are material obstructions to a view toward the north beginning several hundred feet west of the intersection. A map and certain photographs were introduced in evidence. Counsel for the railroad cross-examined witnesses for the plaintiff at great length upon these exhibits, and elicited from them testi
 
 *554
 
 mony to show that at certain points a traveler upon West boulevard or Jasper road could see up the track for long distances, varying from 150 to 1,200 feet. However, the photographs did not describe the situation from within 25 feet of the track up to the track itself.
 

 Part of the testimony of James Wilgor with reference to the obstruction of the view of the track, approaching from the west, both from West boulevard and from Jasper road, is as follows:
 

 “Q. Would you mind if I suggest you start with the first thing that would attract your attention say 500 feet away from the crossing, what is the first thing, say, to the north that attracts your attention in the way of a physical object to a person driving a truck? A. There is a knob.
 

 “Q. What is the knob? A. I don’t know; all I know is that there is a building there they call the knob. What it is used for, I don’t know.
 

 “Q. Is there something there in the way of a ridge of land? A. Yes. * * *
 

 “Q. Describe that land as you look to the north. A. Prom the knob it looks as if it came on a direct level—
 

 “Q. What building are you referring to? A. The knob.
 

 “Q. Is that the tower building, the signal building? A. It is a railroad building.
 

 “Q. What else have you observed? A. I have observed that the weeds come almost on a direct level with the roof of this knob, and the telephone cross wires blend in with a sort of obstruction on a direct level.
 

 
 *555
 
 “Mr. Lamb: I object and ask that it be stricken out.
 

 “The Court: Yes, ‘blend in’ will go out.
 

 “Q. Leave out of the question the obstruction, and tell what they look like to you. A. What they look like to me is just a solid formation like forest trees, or something, where you can see one point, and the next is blocked out by another tree. * * * I can tell in my own language here just what it looks like; I say it looks like a solid wall from any point, any special point where you picked out a point would block your view to anything. * * *
 

 “Q. * * * If you will just tell what you saw as you pass along Jasper Road and get a little bit closer to the crossing, what other things in that direction to the north do you see? A. There is that fence around the Industrial Company.
 

 “Q. What kind of a fence is that? A. Chain link.
 

 “Q. Chain link, and that is the fence that runs along parallel with the railroad? A. Yes.
 

 “Q. And runs up over the top of the hump? A. Yes.
 

 “Q. For part of the distance? - A. Yes.
 

 “Q. Now, what does it look like to you as you look at it from the position that you are in approaching the railroad crossing, and looking to the north, describe its appearance. A. It looks like a solid wail. * * *
 

 “Q. Now, as you get still nearer to the crossing, what further things do you see as you look to the north? A. Well, there is telephone poles there. # # *
 

 “Q. Can you give a description of how close they
 
 *556
 
 appear to be to each other as you look at them looking north? * * * A. About 50 foot from the crossing, you can see about 400 feet up the track, and as you get in here, or get closer to the track, from that point they keep right on blending together like a picket fence, and when you are up at the crossing you can’t see for the telephone poles, they are all in a direct line. ’ ’
 

 This testimony as to the hillock six feet above the level of the west rail, the tower or “knob” 25 feet high, the vegetation 18 inches above the level of the hillock, the web fence six feet high running to the west of the railroad track and over the hillock, and the telegraph poles between 20 and 30 feet high, was materially corroborated with reference to obstruction of view by the testimony of Frank J. Staral, an engineer connected with the county sanitary engineering office. The cross-arms of the telegraph poles and certain brackets attached at a 45-degree angle to the perpendicular part of the fence were described as contributing to the obstruction of view. The tele - graph poles were eight feet from the westerly tracks. While it was conceded that once within the line of poles, that is to say, at eight feet from the track, a traveler on the highway could see for a considerable distance up the tracks, the testimony was conflicting as to visibility at many points between 300 feet west of the tracks, both on West boulevard and on Jasper road, and the line of poles. While Kuhl’s car was struck by the engine at the intersection of Jasper road and the tracks, the testimony does not reveal whether or not he drove onto Jasper road from West boulevard. Hence a jury question was
 
 *557
 
 certainly presented upon the question of obstruction of view.
 

 It is conceded that the engine was backing, and evidence was adduced tending to show that no whistle was sounded and no bell was rung as the train approached the crossing. This evidence also was disputed. Hence a jury question was presented upon each of these points.
 

 Evidence was given to the effect that wreckage from the automobile was found 280 feet south of the crossing, and that there were fresh splinter marks upon the ties for about 280 feet. The fireman, Cotner, first saw Kuhl when the train was some 20 feet north of the crossing. The crossing was 160 feet in width. An inference might have arisen that after Cotner saw Kuhl the train ran some 400 feet before stopping. The accident occurred in the daytime, in the summer, and on a clear day. An experienced engineer stated that an engine of the type in question, running at the rate of 40 miles an hour on a dry track, could be stopped in 175 or 200 feet. A jury question was hence presented upon the question of excessive speed.
 

 We are compelled for the purpose of this decision, a motion for a directed verdict in favor of the railroad having been granted, to take the testimony of the plaintiff below at its strongest in her favor. With this in view, considering the record, we find that evidence was given tending to establish the negligence of the railway company. The defendant company was required by statute, Section 8853, General Code, to sound a whistle at a distance of at least 80, and not further than 100, rods from the crossing, and
 
 *558
 
 to ring the bell continuously until the engine passed the crossing. Positive evidence was given by Wilgor, who testified that he was in a position to see the engine and hear its whistle, and was accustomed to watch the movement of the trains, that no whistle was sounded in his hearing. The holding in
 
 New York, Chicago & St. Louis Rd. Co.
 
 v.
 
 Kistler,
 
 66 Ohio St., 326, 64 N. E., 130, with reference to speed of railroad trains in the open country, did not relax the duty of the railroad at this particular crossing. The evidence tended to show that this was not a road crossing in the open country. The westerly track constituted the boundary of the limits of the city of Cleveland, and .Kuhl was approaching the track possibly from West boulevard, which, as the record tends to show, is a considerably traveled highway.
 

 The trial court directed a verdict for the railroad, and stated in so doing that there was no reasonable inference that could be drawn from the evidence, except that decedent drove on the track without looking, because, if he had looked, he must have seen the engine crossing the track. We do not agree with this conclusion. In view of the substantial testimony as to obstructions existing for such a distance to the north and extending up to within eight feet of the track, reasonable minds might differ as to whether, if plaintiff’s decedent had looked toward the north within the distance between 300 feet and eight feet from the crossing, he could have seen the engine. Cotner, the only eyewitness to the accident, does not testify that the plaintiff’s decedent did not look and listen. The law does not prescribe the exact point at which the traveller on the highway is
 
 *559
 
 to look and listen, and tMs record does not show that the engine was at a point north of the crossing when the plaintiff’s decedent conld have seen it prior to arriving at within eight feet of the track. Reasonable minds might conclude that, having looked toward the north without seeing the engine, at the moment of approach to the crossing Kuhl looked toward the six tracks to the south, that he then again looked toward the north, but too late to avoid the accident.
 

 Moreover, if Kuhl saw the engine at some point prior to within eight feet of the track, it does not necessarily follow that he was guilty of contributory negligence as a matter of law in attempting to cross. It is not in every instance contributory negligence as a matter of law to cross a railroad track in front of a seen engine. The circumstance that the engine was backing is of real importance. Reasonable minds might infer that the decedent saw the engine at some point and assumed either that it was moving forward or that it would stop before it reached the highway, or would signal if it intended to cross the highway. The argument of counsel for the railroad company that the train did not need to signal after it had been seen ignores the fact that the signal not only gives warning of the presence of an engine but also constitutes a signal of intention. Kuhl had the right to assume that the employees of the railroad company, in approaching the highway intersection, would comply with the statute.
 

 Under the circumstances, we conclude that the record does not raise an inference of negligence on the part of Kuhl as a matter of law, and that the
 
 *560
 
 Court of Appeals was correct in reversing the judgment of the trial court.
 

 Judgment affirmed.
 

 Marshall, C. J., Matthias, Kinkade and Robinson, JJ., concur.
 

 Jones, J., not participating.