Myers, J.
 

 The question for review is whether Willis P. Smith, the driver of the automobile, was guilty of contributory negligence as a matter of law.
 

 Where a person for whose benefit an action for damages for wrongful death is instituted under the statutes, is' guilty of- contributory' negligence, damages to such person on account of any pecuniary loss arising from such wrongful death cannot be awarded.
 
 Wolf, Admr.,
 
 v.
 
 Lake Erie & Western Ry. Co.,
 
 55 Ohio St., 517, 45 N. E., 708, 36 L. R. A., 812. Consequently, if Willis P. Smith was guilty of negligence proximately contributing to the injury and death of Mrs. Smith there can be no recovery.
 

 Contributory negligence was pleaded as an affirmative defense by the defendant in the instant case, a part of the amended answer reading as follows: “That the said Willis P. Smith was guilty of negligence' contributing to said injury in approaching and proceeding on to said crossing alleged in the petition, in failing to use and exercise his sense of sight and hearing and in ignoring the warnings and conditions herein alleged.”
 

 The principal assignments of error considered by the Court of Appeals were the actions of the trial
 
 *590
 
 court in overruling defendant’s motion for a directed verdict in its favor at the close of the plaintiff’s evidence, in overruling a like motion at the close of all the evidence, and in overruling the motion for judgment notwithstanding the verdict. While the Court of Appeals mentioned in its opinion its consideration of the three foregoing assignments of error,, nevertheless in its journal entry it finds error only in two of such assignments, “in that the said Court of Common Pleas erred in overruling the motion of the defendant-appellant for a directed verdict in its favor at the close of all the evidence and also in overruling the motion of the defendant-appellant for judgment notwithstanding the verdict.” Inasmuch as the opinion carried substantially the same language as the journal entry, it would seem to indicate that the Court of Appeals found no error in the action of the trial court in overruling the motion of the defendant for a directed verdict at the close of the plaintiff’s evidence in chief. We are inclined to agree with both courts that when the plaintiff rested, the issue of contributory negligence was a question of fact for the jury. It remains to be decided whether at the close of all the evidence the issue of contributory negligence had become a question of law for the court.
 

 “A motion for a directed verdict or for judgment by the defendant accepts as true every fact offered in evidence by the plaintiff with the reasonable inferences deducible therefrom. The rule of evidence in establishing the facts of negligence and proximate cause is the same as applied to the determination of any other questions of fact. And negligence and proximate cause become questions of law only when the evidence is such that reasonable minds cannot reasonably draw different conclusions either as to the facts or as to the deductions from the facts.”
 
 Hubach
 
 v.
 
 Cole, ante,
 
 137, at page 143, 12 N. E. (2d), 283.
 

 In addition to a general denial, the defendant in its
 
 *591
 
 amended answer set forth affirmative defenses in respect to flasher-light signals, the ringing of the hell on the engine, the giving of whistle signals and the operation of the train, as well as contributory negligence upon the part of Willis P. Smith in approaching the railroad crossing where the accident happened. The record reveals that testimony was offered and introduced by the defendant respecting such defenses. Such testimony concerned not only what was done by the crew operating the train and what was done by the section men toward keeping the crossing in proper condition and repair, but also what was alleged to have been done or not done by Smith as he drove his automobile toward the railroad crossing. In other words, when, at the close of all the evidence, the defendant made its motion for a directed verdict in its behalf, there had gone into the record, on the subjects mentioned, evidence pro and con, much of it affecting in one way or another the alleged contributory negligence upon the part of Smith.
 

 The following testimony of Willis P. Smith on recross-examination is quoted by the defendant on the question of whether he exercised ordinary care in approaching the railroad crossing:
 

 “Q. You say you looked at that space immediately north of Williams home? A. Yes.
 

 “ Q. You knew that there was a possibility of a train coming, did you? A. Yes. * * *
 

 “Q. You looked there because you knew that right below was a place of danger, did you not? A. Yes.
 

 “Q. You knew there was a place of danger immediately ahead of you, did you not? A. Yes.
 

 “Q. When you got to this point immediately north of the Williams house where this opening is, you looked to the right because you knew you were approaching a place of danger, did you not? A. No, I looked to see if any trains were coming.
 

 
 *592
 
 “Q. You knew if any were coming you would be in a place of danger, did you not? A. Yes.
 

 “Q. So when you reached this point north of the Williams house you knew you were approaching a place where there was danger of a train coming across Leighton street, did you? A. Yes.”
 

 The defendant contends that the foregoing and other like testimony by Smith shows that he was guilty of contributory negligence, citing, among other authorities, the following cases:
 
 Toledo Terminal Rd. Co.
 
 v.
 
 Hughes,
 
 115 Ohio St., 562, 154 N. E., 916;
 
 Pennsylvania Co.
 
 v.
 
 Morel,
 
 40 Ohio St., 338;
 
 Goodwin, Admx.,
 
 v.
 
 Gaston et al., Recrs.,
 
 103 Vt., 357, 154 A., 772, at page 777, and
 
 Tidd
 
 v.
 
 N. Y. C. Rd. Co.,
 
 132 Ohio St., 531, 9 N. E. (2d), 509. If the foregoing had been the only kind of testimony offered by Smith there could be no recovery in this case. However, there is other testimony by Smith and other witnesses tending to prove that he was exercising ordinary care at the time. We quote the following from the testimony of Smith on direct examination:
 

 ‘ ‘ Q. I understand you that the first view you got of this train was at the fence south of the Williams house. A. Well, right close to that. * * *
 

 “Q. Did you look any time before you got to that place? A. Yes.
 

 “Q. Where? A. As I approached the track I looked both ways.
 
 * * *
 

 “Q. If the fence i's between fifty and sixty feet from the north rail of the main track, that is the place where you first looked, you say? A. I was looking right along there, but I cannot tell you to the inch. No other man could that is breathing.
 

 “Q. What do you now say? Was it more than forty feet to the point at which you looked and 'knew the train was coming, or was it less? A. I looked to the left and right and she looked to the left and right and I started ahead. I can’t tell you exactly. * * *
 

 
 *593
 
 “Q. But you had seen the train before that, had you? A. No. It started to skid the second I saw it. I put on the brakes and the car started to skid. She said, ‘My Grod, a train.’ *
 
 *
 
 *
 

 “Q. What kind of brakes, hydraulic or mechanical? A. Mechanical.
 

 “Q. State if you had anything on your rear wheels outside of the tires. A. Yes.
 

 “Q. What was it? A. New chains.
 

 ‘ ‘ Q. Where had you bought the chains and when did you put them on? A. I bought them on December 25th, at a filling station at the corner of Franklin and Leighton streets. * * *
 

 “Q. Why did you continue operating that car in second speed? A. The chains were Webb chains. At the top there was webb and buckle.
 

 “Q. But why did you do that? A. It was to stretch the webb up on the chains so that I could make it tighter later and get more power. * * *
 

 “Q. Before the train struck the car, state whether or not you heard any sound of the whistle from that locomotive. A. I did not.
 

 “Q. Did you hear any sound of the bell on it? A. No.
 

 “Q. Had you been listening for it? A. Yes.
 

 “Q. Could you have heard it from your position in the car, with the windows up? A. Yes.”
 

 Another witness for the plaintiff, M. L. Anderson, who was an eyewitness to the collision, testified as follows:
 

 “Q. At the time you observed that automobile at the Williams house, about how fast was his automobile moving? A. He was not coming very fast. I would say 8 or 10 miles an hour when I first saw him. # # #
 

 “Q. When he went on the track was the car sliding sideways, or how was it? A. He was headed cater-cornered, with his car headed southeast. * * *
 

 
 *594
 
 “Q. Did you hear any whistle? A. No.
 

 “Q. Did you hear any bell? A. No.
 

 “Q. Did yon hear that gong on the pole? A. No.
 

 “Q. Did you see the flasher-lights working? A. No, I did not notice it.
 

 “Q. Were yon close enough so that if the gong had been ringing you could have heard it? A. I think I could.'
 

 “Q. About how far from you was it? A. About 30 feet.
 

 “Q. Were you close enough that if the train had whistled and the bell rung, you could have heard them? A. I have heard it before and I did not hear it this time.”
 

 Without quoting further from the record it is sufficient to observe that there was material evidence both ways in respect to contributory negligence. Smith and others on his behalf testified as to the condition of the weather, the icy highway, the location of the crossing, the view down .the track, the speed of his automobile, putting the car in second gear, putting chains on his car, and other circumstances and conditions bearing on the question of exercising ordinary care. Then there were witnesses for the defendant who testified relative to some of the same subjects and as to admissions made by Smith in respect to brakes, skidding and driving his car. At one point, stress is laid upon the speed of the automobile; at another, that the brakes were not working; at another, that Smith had a clear view of the track- and could have seen the train if he had only looked in time. Under the conflicting testimony on this subject, had the question of contributory negligence at the close of all the evidence become one of law instead of fact? If it was the province of the jury to say whether the engineer rang the bell or blew the whistle, was it not equally the province of the jury to say whether Smith looked and listened
 
 *595
 
 when same would have been effective, and whether he drove his automobile in the exercise of ordinary care?
 

 “In all cases where in determining the existence or non-existence of contributory negligence it becomes necessary to detect the truth from conflicting evidence, it becomes a question of fact and not of law.”
 
 McMurtrie
 
 v.
 
 Wheeling Traction Co.,
 
 107 Ohio St., 107, 140 N. E., 636.
 

 “Where the question of contributory negligence depends on a variety of circumstances, from which different minds may arrive at different conclusions as to whether there was negligence or not, the question ought to be submitted to the jury under proper instructions.”
 
 Marietta & Cincinnati Rd. Co.
 
 v.
 
 Picksley,
 
 24 Ohio St., 654.
 

 Negligence and contributory negligence are measured by the same standard, the failure to exercise ordinary care. The plaintiff, in proving his cause of action, and the defendant, in proving its defense, are both entitled to have the same scales used in weighing the testimony presented by each.
 

 “In cases where such issues are made, the question of contributory negligence on the part of the plaintiff or his intestate, and of negligence on the part of the defendant causing the injury complained of, should be considered and determined upon the same principles and by the same rules exactly.”
 
 Cleveland, C. & C. Rd. Co.
 
 v.
 
 Crawford, Admr.,
 
 24 Ohio St., 631, at page 636, 15 Am. Rep., 633.
 

 Considerable attention has been directed to the distance of an unobstructed view of the railroad track and the opportunity to observe the oncoming train. Evidence was introduced by both plaintiff and defendant in respect to the approach to the railroad crossing, and in respect to a view of the railroad track from various points on Leighton street over which Smith drove his automobile in approaching the crossing. Although such evidence was relevant to the issue
 
 *596
 
 of contributory negligence, it did not present a question of law, but one of fact. “The law does not prescribe the exact point at which the traveler on the highway is to look and listen. ’ ’
 
 Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.
 
 v.
 
 Kuhl, Admx.,
 
 123 Ohio St., 552, 558, 559, 176 N. E., 222.
 

 It is contended that Smith was guilty of contributory negligence as a matter of law because he knew the road, the ice and snow on the street, the neighborhood, the railroad crossing, the danger there, and the probable appearance of trains, but nevertheless kept on going. Smith admitted such facts on cross-examination. But in his direct examination he said much more. He testified: He looked both ways as he approached the track. He listened. He heard no bell. He heard no'whistle. He saw no flasher-lights working. By reason of these facts he kept on going, not fast but in second gear at 10 or 15 miles an hour with new chains on the rear tires. Other witnesses testified to the same effect in respect to the bell, the whistle, the flasher-lights and the speed of the automobile.
 

 In order to determine whether Smith was guilty of contributory negligence as alleged by the defendant, it is necessary to know the surrounding circumstances. It is alleged in the amended answer that Smith was guilty of such negligence “in failing to use and exercise his sense of sight and hearing and in ignoring the warnings and the conditions * * Smith said he listened but did not hear the bell or whistle of the train. In the instant case, the question whether the bell was1 rung or the whistle blown must first be determined in order to test the credibility of Smith’s statement in that respect. Other witnesses for the plaintiff in a position to hear, said they heard no bell or whistle, while employees of the defendant testified definitely that the whistle was blown several times and the bell continuously rung. Consequently the truth or falsity of defendant’s averments about Smith’s failure
 
 *597
 
 to exercise his sense of hearing in respect to such Warnings could only be determined by the fact whether such warnings actually were given.
 

 “Where the evidence of the plaintiff shows actionable negligence on the part of the company, and the question of contributory negligence of the plaintiff depends upon a variety of circumstances from which different minds may reasonably arrive at different conclusions as to whether there was contributory negligence or not, the question should be submitted to the jury under proper instructions; and it is error in such case for the court to direct a verdict for the defendant.”
 
 Cincinnati Street Ry. Co.
 
 v.
 
 Snell,
 
 54 Ohio St., 197, 43 N. E., 207, 32 L. R. A., 276.
 

 Without quoting further from the record it is evident that reasonable minds could come to different conclusions respecting the question of contributory negligence upon the part of Smith as he approached the railroad crossing. That being true, the issue -of contributory negligence was still a question of fact for the jury.
 

 Since there was no evidence of any pecuniary loss upon the part of the four other beneficiaries, the two sisters, the niece and nephew, the award of $10 to each of them was contrary to law and in that respect the judgment of the Court of Appeals will be affirmed. In respect to the award of $5700 to Willis P. Smith, the judgment of the Court of Appeals will be reversed. As thus modified the judgment of the Court of Common Pleas will be affirmed.
 

 Judgment accordingly.
 

 Bat, Williams and Gorman, JJ., concur.