Trushel, Appellant, *v.* The New York Central Rd. Co., Appellee.

(No. 691—Decided April 30, 1956.)

*Messrs. Miller, Miller & Miller,* for appellant.
*Mr. G. Ray Craig,* for appellee.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Huron County, entered by that court following the verdict of a jury in favor of defendant, appellee herein. The parties will be referred to herein as plaintiff and defendant, respectively, as they appeared in the trial court.

The action was commenced by the plaintiff to recover damages for claimed personal injuries resulting from a collision between a train operated by the defendant and an automobile which plaintiff operated upon the tracks of the defendant on Townsend Street in the village of Greenwich, Huron County, on May 31, 1953, at about 8:15 in the evening of that date.

Plaintiff, by her petition, alleged negligence against the defendant in the following particulars:

"At the time and place of the collision, the defendant was negligent in particulars following:

"(1) operating its train at a greater speed, to wit: 90 m. p. h., than was reasonable and proper, having due regard for

"(a) a cut of cars on its southerlymost track west of the highway,

"(b) private buildings closely built to its southerly right-of-way west of the highway,

"(c) the village and its speed limit for trains then in force and effect, a copy attached, made a part hereof and marked for identification 'Exhibit A,' and

"(d) the differential of its flasher circuit and highway train arrival;

"(2) maintaining an inoperative flasher signal device;

"(3) failing to ring the bell, to sound the whistle, or to light headlight; * * *"

The charges of negligence contained in plaintiff's amended petition filed following the ruling of the court in striking certain allegations from the petition were:

"(1) operating its train at a greater speed, to wit: 90 m. p. h. than was reasonable and proper, having due regard for

"(a) a cut of cars on its southerlymost track west of the highway,

"(b) the time interval—10 seconds—between the time the train made the flasher circuit and arrived at the highway;

"(2) maintaining a flasher signal device that did not flash the signal of the approaching train;

"(3) failing to ring the bell, to sound the whistle, or to light headlight; * * *"

The allegations of the answer of the defendant to the amended petition, pertinent in a determination of this appeal, were:

"It, also, admits that in the early evening of May 31, 1953, plaintiff was operating an automobile in a northerly direction on Townsend Street, a public highway in the village of Greenwich, Ohio, and that at the same time the defendant was operating a passenger train in a northeasterly direction on its right of way in said village, and that in the intersection of defendant's right of way and Townsend Street a collision between said automobile and said train occurred; and admits and avers that in some way unknown to defendant, plaintiff, after alighting from said automobile, was injured, but not to the extent and seriousness alleged in the amended petition.

"Further answering said amended petition, defendant denies each and all the allegations and statements in said amended petition contained, except such as are herein admitted."

The facts as disclosed by the record essential in a consideration of this appeal are that defendant maintained three sets of railway tracks extending in a general northeasterly and southwesterly angular direction which passed over and intersected Townsend Street, extending in a northerly and southerly direction in the village of Greenwich in Huron County, and on the date of the collision and for a considerable time prior to that date the defendant maintained flasher signalling devices located at the northwesterly and southeasterly limits of the crossing.

The two most northerly tracks were maintained by the defendant as main tracks and were used for trains, while the most southerly track was referred to and known as a "team" or storage track and was used by the defendant as a storage track and for loading and unloading box and other freight cars, also for cars used as living quarters for workers in bridge or carpenter crews.

It is undisputed that, at the time of the collision and for some time prior thereto, the southerly track was occupied by a string of box and other freight cars and cars used for living quarters for workmen, from a point a distance estimated by witnesses at from 30 to 70 feet in a westerly direction from the intersection and extending upon that track to the west in a continuous string for a distance of from 800 to 1000 feet. It is clear that the view of the operator of an automobile approaching the crossing upon Townsend Street from a southerly direction would be obstructed until the occupant of such automobile had reached a place beyond the standing freight cars, at which time the forward end of the automobile would necessarily be very near the second or center set of tracks, upon and over which tracks the train involved in the collision was being operated at the time of the collision.

The testimony is that plaintiff operated the automobile upon Townsend Street in a northerly direction at about 4 or 5 miles per hour to a place at or near the southerly and "team" set of tracks, where she brought the automobile to a stop and looked for approaching trains, but did not see or hear the train; following which plaintiff operated the automobile upon the center set of tracks, at which point plaintiff first saw the train 200 feet away and got out of the automobile, after which the train, being operated by the defendant in an easterly direction at from 76 to 79 miles per hour, collided with the automobile, bringing some part of the automobile into contact with plaintiff, resulting in a fracture, as claimed by plaintiff, of one of the vertebrae of plaintiff's spine.

The plaintiff testified that the flashing devices were not signalling or flashing as she approached and operated the automobile upon the tracks, and that she did not hear any warning from the train by whistle or bell, prior to the collision, whereas the testimony of the witnesses for the defendant is that the statutory signals by both whistle and bell were sounded and that the flasher signalling devices were in operating condition and were flashing as the train approached and passed upon and over Townsend Street.

We will give consideration to plaintiff's assignment of errors as follows:

1. The court erred in striking from plaintiff's petition her specification of negligence, to wit (1-b and c).

2. The court erred in giving, over plaintiff's objection, three special requests, to wit, charges Nos. 1, 2 and 3.

3. The court erred in its general charge, to wit, the village of Greenwich has no valid speed ordinance.

4. The court erred in its charge to the jury, to wit, an automatic signal is a mere warning.

5. The court erred in charging the jury that defendant's answer pleaded negligence by intimation.

6. The court erred in charging the jury about a place on the south side of Townsend Street where the train could be seen.

Specification (c) referred to in plaintiff's first assignment of error relates to an ordinance of the village of Greenwich regulating the speed of trains, which provided as follows:

"Ordinance No. 263.

"That it shall be unlawful for any engineer, conductor, or person in charge of any train or locomotive to run; or cause to be run said train or locomotive, within the corporate limits of the village of Greenwich, Ohio, at a greater rate of speed than ten miles per hour."

The order of the Court of Common Pleas in striking the ordinance from the petition determined in part that:

"This cause came on this day for hearing on the defendant's motion to strike certain parts of the petition, and was argued by counsel.

"On due consideration thereof, the court finds that said motion as to item (b) of section I as to item (c) of section II is well taken; the court finding that the village ordinance therein specified is not reasonable as to speed; and it is the order of the court that said item (b) of section I and item (c) of section II of said motion be stricken from the petition, to which the plaintiff excepts."

The Supreme Court has held in a number of decisions that only where it is shown clearly to the court that an ordinance regulating the speed of trains within a village is an unreasonable exercise of the police power, can the court declare such regulation unreasonable and, by reason thereof, invalid.

In the case of *Blancke, Admx.,* v. *New York Central R. R.*

*Co.,* 103 Ohio St., 178, 133 N. E., 484, the rule of law applicable to a consideration of a village ordinance regulating the speed of trains and the common-law rule governing the subject of speed, is found stated in the syllabus as follows:

"2. A statute or ordinance regulating speed, adopted pursuant thereto, is a valid exercise of the police power, unless it clearly appears that such unduly restricts speed within a municipality, or unreasonably limits the speed in open or outlying sections of the municipality.

"3. Where the pleadings state facts disclosing a common-law duty due plaintiff's decedent, and evidence has been offered supporting such issue, it is for the jury to determine whether that duty was violated and whether such violation was the proximate cause of the injury."

In the opinion of the court in the *Blancke case, supra,* at page 184, it is stated:

"* * * This power is exercised for the safety of the public, and, primarily, the character of the regulations, including the places within the corporate limits where the speed is to be regulated, is committed to the legislative authority of such municipality. The presumption of law obtains that such regulation is necessary and reasonable, and before the court will interfere with the discretion committed to the public authorities it must clearly appear that the exercise of such power upon the part of the municipality is unreasonable or unnecessary for the public safety. And only where it is shown clearly to the court that the exercise of this power is unreasonable and arbitrary, unduly restricting the speed of trains within the corporate limits, or where it unreasonably limits the speed of the trains in open or outlying sections of the municipality where the public safety is not affected, may the court declare such regulatory ordinance unconstitutional and void.

"The record does not disclose any facts which tend to show that the ordinance limiting the speed to fifteen miles within the village of Port Clinton was an unreasonable exercise of the police power vested in the village council. Having proven that the speed of the train was thirty miles an hour, the ordinance should have been admitted; though it still remained to be proven that the excessive speed was the proximate cause of the acci-

dent. That, including the question of contributory negligence, was for the jury to determine."

In *Cleveland, Cincinnati & St. Louis Ry. Co.* v. *Grambo, Sr., Admr.*, 103 Ohio St., 471, 134 N. E., 648, 20 A. L. R., 1214, the rule of law applicable is stated in the syllabus as follows:

"3. An ordinance regulating the speed of trains through a municipality, enacted under the exercise of police power, which conforms to the limitations prescribed by the Legislature, is presumptively reasonable and valid, and not in conflict with the state or federal Constitutions. But the presumption may be rebutted, and in order to overcome such presumption a railway company must affirmatively show its unreasonableness."

The law as established by the Supreme Court applicable to the consideration of ordinances regulating the speed of trains is stated again in the case of *Toledo, Columbus & Ohio River Rd. Co.* v. *Miller,* 108 Ohio St., 388, 140 N. E., 617. The paragraph of the syllabus applicable being as follows:

"2. The constitutionality and reasonableness of a municipal ordinance regulating the speed of trains are questions of law for the court to decide, and to justify declaring void an ordinance limiting the speed of trains within a municipality its unreasonableness, or want of necessity as a police regulation for the protection of life and property, must be clear and manifest."

We determine, therefore, that the trial court was in error in striking the village ordinance and the allegations charging a violation of same from plaintiff's petition, without first requiring the defendant to make a showing by evidence that the circumstances and conditions surrounding the crossing and the manner in which trains were operated did not justify or make reasonably necessary the regulation respecting the speed of trains and that the ordinance was, therefore, an unreasonable exercise of the police power by the village.

We hold that the ruling of the trial court in striking the allegation (b) as follows, "private buildings closely built to its southerly right of way west of the highway," referred to in plaintiff's assignment of error No. 1, was not error and, therefore, was not prejudicial to plaintiff.

This court has held that a party aggrieved by the ruling of

a court in striking allegations from a pleading may, by making objection and excepting to the ruling, preserve the right to a review and correction of the error on appeal. *Cassidy* v. *Ohio Public Service Co.*, 74 Ohio App., 355, 58 N. E. (2d), 802.

Plaintiff's assignment of error No. 3, having reference to the charge of the court to the effect that the village of Greenwich had no valid speed ordinance, is well taken, for the reason as stated above that the ordinance should not have been excluded from plaintiff's case otherwise than in accord with the requirements concerning proof, that the ordinance constituted an unreasonable exercise of police power by the village of Greenwich. We do not determine, however, in view of the evidence in the record before us, that the charge respecting the ordinance was prejudicial. It is within the province of and devolves upon the trial court to determine in the first instance, in the manner required by the Supreme Court, whether or not the ordinance was unreasonable and invalid.

This court determines that the trial court erred in giving the instructions in the special requests numbered one, two and three, relating to contributory negligence on the part of the plaintiff and referred to in plaintiff's assignment of error number two, for the reason that when considered together with the general charge of the court on the subject, we are persuaded to the conclusion that undue emphasis was accorded the defense of contributory negligence, to the prejudice of the plaintiff.

It should be noted that each of the three separate instructions referred to and given to the jury in advance of the argument of counsel relate to the defense of contributory negligence and each such special instruction emphasizes that issue by the use of the phrase "in the slightest degree," and that the defense is referred to and is again emphasized by the use of the words "slightest degree" in the general charge of the court to the jury.

We do not hold that the use of the phrase, "in the slightest degree," would constitute error, but we are impressed that the employment of the objectionable phrase in repeated charges was a factor in the result that contributory negligence was given undue prominence and probably did, in our view, prevent an impartial consideration of the issues by the jury.

While, as stated above, the use by the trial court of the phrase referred to did not, in the absence of undue repetition, constitute error, nevertheless we consider that reference should be made to the comment of the Supreme Court concerning the use of the phrase "in the slightest degree" in *Chesrown* v. *Bevier*, 101 Ohio St., 282, 128 N. E., 94, where it is stated in the opinion rendered by Robinson, J., as follows:

"That special charge II is a correct statement of the law must be conceded, although we prefer the word 'any' to the words 'the slightest,' and since there was evidence tending to prove that the negligence of the plaintiff below directly contributed to his injury, it was error to refuse to give it to the jury."

We consider that a pertinent statement having reference to the use of the phrase "in the slightest degree" and also to the subject of undue repetition in the giving of instructions to the jury is made in the opinion of the Court of Appeals for Summit County in *Selby* v. *Mayflower Hotel*, 32 Ohio Law Abs., 275:

"On the subject of contributory negligence, the court charged upon that subject four different times in its general charge, and in two of said instances it charged that the plaintiff could not recover if he himself was negligent 'even in the slightest degree.' The next to the last of the charges upon that subject was given at the end of the general charge, and then at the suggestion of counsel for defendant the court charged on the duty of the plaintiff to look and see visible objects on the floor of the room in question, and again repeated the consequences attendant upon the contributory negligence of plaintiff. It is our opinion that the continued repetition of the charge on contributory negligence placed undue emphasis on that issue, and in that respect was error. Furthermore, the use of the phrase 'even in the slightest degree,' while not held to be prejudicial error, has been criticized by the Supreme Court, and, in connection with charges upon the subject of contributory negligence, is not a phrase the use of which is recommended.

"Under the evidence shown by the record in this case, we are of the opinion that the combination of errors enumerated above constituted such error as was prejudicial to the substan-

tial rights of the plaintiff in this action, and that the jury probably was misled by the charge as given."

Without further comment in reference to the subjects of undue emphasis and repetition in the giving of instructions to juries and the prejudice and consequent error which may result by reason thereof, we cite as being pertinent and applicable several cases in which these questions have been given careful consideration:

*American Steel Packing Co.* v. *Conkle,* 86 Ohio St., 117, 99 N. E., 89; *Uncapher, Admr.,* v. *West, Recr.,* 100 Ohio St., 202, 126 N. E., 91; *Tresise* v. *Ashdown, Admr.,* 118 Ohio St., 307, 160 N. E., 898, 58 A. L. R., 1476; *National Life and Accident Ins. Co.* v. *Kelly,* 42 Ohio App., 255, 182 N. E., 46.

Plaintiff's assignment of error No. 4 is in reference to the bearing and significance which automatic signalling devices should have in considering the conduct of and care which the traveler on the street or highway is required to exercise in approaching railway tracks where flasher signals are maintained, it being contended that the statement of the court to the effect that "an automatic signal is a '*mere*' warning" constituted error.

It is our view that the rule of law applicable to signalling devices at railway crossings was stated by the Supreme Court in the first paragraph of the syllabus in *Toledo Terminal Rd. Co.* v. *Hughes,* 115 Ohio St., 562, 154 N. E., 916:

"1. A traveler approaching a railroad crossing at which he knows an automatic signal is maintained, while entitled to place some reliance upon the indication of safety which silence of the signal implies, is nevertheless bound to use such care in addition as an ordinarily prudent man would use under such circumstances."

See, also, annotations, 56 A. L. R., 114.

In *Columbus, Delaware & Marion Electric Co.* v. *O'Day, Admr.,* 123 Ohio St., 638, 176 N. E., 569, the second paragraph of the syllabus is as follows:

"2. Where an automatic signal alarm, voluntarily instituted and operated by an interurban street railway company at a city street crossing fails to operate as a traveler approaches such crossing, its failure to operate is not in the nature of an implied invitation to cross. The alarm constitutes a warning merely."

The general rule as stated in the *Hughes case, supra,* is restated in a part of the third paragraph of the syllabus in the *O'Day case, supra,* as follows:

"3. The presence of an automatic signal alarm, voluntarily instituted and operated by an interurban railway company at a city street crossing, does not absolve a traveler upon the highway from the exercise of the care that a reasonably prudent person would exercise under all the circumstances. * * *"

We are unable, therefore, to find that the use of the word, "mere," as descriptive of the purpose of signalling devices constituted error prejudicial to the plaintiff, notwithstanding, it is our view that a more accurate and appropriate statement of the law applicable is contained in the quoted paragraph of the syllabus in the *Hughes case, supra.* See, also, *Tanzi* v. *New York Central Rd. Co.,* 155 Ohio St., 149, 98 N. E. (2d), 39, 24 A. L. R. (2d), 1151.

Plaintiff's fifth assignment of error has reference to the employment by the court of the word, "intimation," in referring to the manner in which the defendant had by its answer raised the defense of contributory negligence. Contributory negligence is generally considered as an affirmative defense and we have not been apprised of any authority which sustains the "intimation" of contributory negligence instead of allegations which constitute a pleading of that defense, and therefore consider the use of the term improper and prejudicial.

We hold that the defendant did not plead the defense of contributory negligence in its answer in the case now before this court.

The rule of law applicable to the defense of contributory negligence is stated in the opinion of the court in *Tresise* v. *Ashdown, Admr.* (118 Ohio St., 307), *supra,* at p. 316:

"It has long been established in this state that, if the plaintiff's evidence shows an injury by defendant's negligence, and does not raise an implication that his own negligence contributed thereto, the burden of proving such contributory negligence as will defeat a recovery rests upon the defendant, and that burden must be sustained by a preponderance of the evidence. However, if plaintiff's own testimony raises a presumption of contributory negligence upon his part, the burden of proof does not shift, and he is not required to remove such presumption by

a preponderance of the evidence, but is only required to furnish such proof as is sufficient merely to equal or counterbalance the evidence tending to show contributory negligence on his part. *B. & O. Rd. Co.* v. *Whitacre,* 35 Ohio St., 627; *Columbus Ry. Co.* v. *Ritter,* 67 Ohio St., 53, 65 N. E., 613; *Klunk* v. *Hocking Valley Ry. Co.,* 74 Ohio St., 125, 77 N. E., 752; *Maddex* v. *Columber,* 114 Ohio St., 178, 151 N. E., 56; *Toledo, St. L. & W. R. R.* v. *Star Flouring Mills Co.,* 146 F., 953, 77 C. C. A., 203.''

See, also: *Bradley* v. *Cleveland Ry. Co.,* 112 Ohio St., 35, 146 N. E., 805; *Centrello, a Minor,* v. *Basky,* 164 Ohio St., 41, 47, 128 N. E. (2d), 80.

Plaintiff's assignment of error No. 6 has reference to the statement appearing in the general charge of the court to the jury, as follows:

''If you find from the evidence that there was a place on the south side of Townsend Street where the train could be seen as it approached the crossing, and further find that the train could have been seen by the plaintiff from that space as she passed, and she failed to look without reasonable excuse therefor, she was guilty of negligence, and if such negligence contributed to produce the injury, then she could not recover.''

As we view the facts and circumstances presented by the record now before us, the plaintiff was not required, as an absolute duty as a matter of law, to see the approaching train and avoid a collision, but, under the circumstances and conditions presented by the evidence, it was for the jury to determine whether or not plaintiff was guilty of contributory negligence in failing to exercise ordinary care in operating the automobile upon the tracks of the railway under the circumstances as they were shown to exist at that time.

We are impressed that the record in the case now before us presents a situation similar and analogous to the facts and circumstances with respect to obstructions to view as appears to have been present in the case of *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Kuhl, Admx.,* 123 Ohio St., 552, 176 N. E., 222. The syllabus in the *Kuhl case* is, therefore, applicable:

''In an action for personal injuries arising out of a collision between an automobile and a backing engine at an inter-

section of a railroad and a highway, where the record tends to show that the view of such railroad crossing at certain points approaching the crossing is obstructed, and the record presents no evidence tending to show that a traveler in such automobile upon the highway did not look and listen for the train, the question of contributory negligence becomes one of fact for the jury.''

From the opinion of the court in the *Kuhl case, supra,* we quote the following pertinent statement:

''* * * Cotner, the only eyewitness to the accident, does not testify that the plaintiff's decedent did not look and listen. The law does not prescribe the exact point at which the traveler on the highway is to look and listen, and this record does not show that the engine was at a point north of the crossing when the plaintiff's decedent could have seen it prior to arriving at within eight feet of the track. Reasonable minds might conclude that, having looked toward the north without seeing the engine, at the moment of approach to the crossing Kuhl looked toward the six tracks to the south, that he then again looked toward the north, but too late to avoid the accident.''

The charge of which complaint is made in plaintiff's sixth assignment of error as quoted above would have been proper and applicable under circumstances and conditions such as were presented in *Cleveland, Columbus, Cincinnati & Indianapolis Railway Co.* v. *Elliott,* 28 Ohio St., 340. Paragraphs three and four of the syllabus in the *Elliott case* state the rule of law applicable:

''3. What is such contributory negligence as will defeat a recovery is usually a question of mixed law and fact, to be determined by the jury from all the circumstances of the case and under proper instructions from the court; but where the undisputed facts show that by the exercise of ordinary care a party might have avoided injury, he can not recover.

''4. It is the duty of a traveler upon the highway, when approaching a railroad crossing, to make use of his senses to ascertain if there is a train in the vicinity; and if, when in full possession of his faculties, he fails to see or hear anything, when a prudent man, exercising his eyes and ears, with ordinary care, would have discovered a train in close proximity, and he is

thereby injured, he is guilty of such negligence as will prevent a recovery."

It is considered that the two paragraphs next preceding the last paragraph in the opinion in the *Elliott case, supra,* indicate clearly the distinction which must be made between the facts in that case and the case now before the court:

"If an individual, with a fair opportunity to see and hear a railroad train for a mile or more before reaching the track, so conducts himself as to drive straight into a collision, he does not act with ordinary care, and assists at least in bringing about the accident.

"A majority of the court are therefore of the opinion that the undisputed facts show that the defendant in error was chargeable with contributory negligence; that he did not exercise that degree of care which one of ordinary prudence should have done, and that the gravity of his disaster does not furnish sufficient ground for his rocovery."

The charge as given by the court now under consideration and concerning which error is claimed by appellant, although improper in this case, was sanctioned under an altogether different state of facts by the Supreme Court in *Pennsylvania Co.* v. *Rathgeb*, 32 Ohio St., 66. It is stated in the opinion of the court in the *Rathgeb case* that:

"The evidence is clear that Rathgeb might have seen the train at any point less than 300 feet from the crossing, until he reached it, and seen it in time to have avoided a collision. Although he says he was near-sighted, still he stated that he could have seen a train for a distance of fifty rods, and his defect of vision was not such as to vary the principle.

"Being able to see, therefore, and the opportunity of seeing being presented, his failure to discover or to be aware of the approaching cars, we think, was not only evidence of negligence, but negligence itself, and sufficient to justify a verdict against him. And in other parts of the charge, the court declined to say that the positive duty of the plaintiff was to look up along the track, but left it to the jury to determine whether it was incumbent upon him to do so or not. We think such directions do not meet the requirements of the case. The rule should be laid down in such clear terms that there can be no mistake in its ap-

plication. This case is really disposed of by that of *Railroad* v. *Elliott*, 28 Ohio St., 340. In *Cleveland, C. & C. R. R.* v. *Crawford*, 24 Ohio St., 631, the first clause of the syllabus is, 'Ordinary prudence requires that a person in the full enjoyment of the faculties of hearing and seeing, before attempting to pass over a known railroad crossing, should use them for the purpose of discovering and avoiding danger from an approaching train; and the omission to do so, without a reasonable excuse therefor, is negligence, and will defeat an action by such person for an injury to which such negligence contributed.' "

We conclude, therefore, that the trial court was in error in charging the jury in the manner as quoted above under the facts and conditions as presented by the record now before us and that the charge as given was therefore prejudicial.

We do not find the remaining assignments of error well-taken, and overrule same.

By reason of the errors of law as indicated, the judgment of the Court of Common Pleas is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

CONN and FESS, JJ., concur.