COULTER, ADMR., APPELLEE, *v.* THE GENERAL FIREPROOF-
ING CO., APPELLANT.

(Decided March 12, 1941.)

*Mr. George J. Carson* and *Mr. Frank M. Enright,* for appellee.

*Messrs. Smoyer, Kennedy, Smoyer & Vogel,* for appellant.

STEVENS, J. Plaintiff, as administrator of the estate of Frank B. Leathers, deceased, brought his action against the defendant in the Court of Common Pleas to recover damages for the wrongful death of his decedent, which was alleged to have been caused by the negligent operation of defendant's motor vehicle.

On June 13, 1940, the jury returned a verdict in favor of plaintiff for $11,000.

Thereafter a motion for a new trial was duly filed, and on June 25, 1940, the trial court made a written finding overruling the motion and ordering the entry of judgment on the verdict.

On July 17, 1940, an entry was tendered to counsel for the defendant which provided for the payment of interest at six per cent upon the amount of the verdict from June 13, 1940, the date of the return of the ver-

dict by the jury. Counsel for the defendant refused to approve such entry, and the matter was then submitted to the court upon the question as to whether plaintiff was entitled to interest upon the amount of the verdict from the date of its return by the jury or from the date of the entry of judgment. The trial court ordered the payment of interest on the amount of the verdict from the date of its return by the jury, June 13, 1940.

Defendant paid the amount of the verdict, but has appealed on questions of law in order to have determined the propriety of the order for the payment of interest from the date the verdict was returned.

Validity of the appeal has not been challenged.

The question thus presented is: In a tort action for damages for wrongful death, is the plaintiff entitled to interest upon the amount of the verdict from the date of the return of the verdict by the jury, or from the date of the entry of judgment upon the verdict?

At common law judgments did not bear interest, and therefore a consideration of the question here presented necessitates an investigation of the statutory provisions relative to interest upon judgments.

In that connection, the legislative history upon the subject is helpful.

The first enactment is found in the statutes of the Northwestern Territory, passed November 15, 1799, entitled "An act regulating the interest of money and fixing the same at six per centum per annum, and for preventing usury." 1 Chase's Statutes of Ohio and of the Northwestern Territory, page 217, chapter XC. Section 1 thereof was as follows:

"Section 1. Be it enacted, *etc.* That from and after the publication of this act, all creditors (excepting as hereinafter excepted) shall be allowed to receive interest, at the rate of six per centum per annum, for all moneys after they become due, on bond, bill, promis-

sory note, or other instrument of writing; on any judgment recovered in any court of record, now or hereafter to be established within the territory, from the day of signing judgment, until effects be sold, or satisfaction of such judgment be made * * *.''

The next statute passed thereon was passed by the General Assembly of the state of Ohio on December 29, 1804, and appears in 3 Ohio Laws, 149, titled ''An act, fixing the rate of interest and for preventing usury.'' That act contained the following:

''Section 1. Be it enacted by the General Assembly of the state of Ohio, that all creditors shall be entitled to receive interest on all money, after the same shall become due, either on bond, bill, promissory note or other instrument of writing or contract for money or property, on all balances due on settlement between parties, or money withheld by unreasonable and vexatious delay of payment, and all judgments obtained from the date thereof, until such debts, money or property is paid, at the rate of six per cent per annum, and no more * * *.''

Thereafter, on January 12, 1824, an act titled ''An Act fixing the rate of Interest,'' was passed, which appears in 3 Curwen's Revised Statutes of Ohio, page 2317, chapter 1325. Therein the following appears:

''Section 1. Rate of interest. Be it enacted, *etc.*, that all creditors shall be entitled to receive interest on all money, after the same shall become due, either on bond, bill, promissory note, or other instrument of writing, or contract for money or property; on all balances due on settlement between parties thereto, or money withheld by unreasonable and vexatious delay of payment; and on all judgments obtained from the date thereof; and on all decrees obtained in any court of chancery, for the payment of money, from the day specified in the said decree for the payment thereof, or if no day be specified, then from the day of entering

thereof, until such debt, money, or property is paid; at the rate of six per centum per annum, and no more. * * *"

In 66 Ohio Laws, 91, appears "An act to amend an act fixing the rate of interest," passed May 4, 1869. It was there stated:

"Section 1. Be it enacted by the General Assembly of the state of Ohio, that the parties to any bond, bill, promissory note or other instrument of writing, for the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount of such bond, bill, note or other instrument of writing, at any rate not exceeding eight per centum per annum, payable annually.

"Section 2. That upon all judgments, decrees or orders rendered upon any bond, bill, note or other instrument of writing, containing stipulations for the payment of interest in accordance with the provisions of the first section of this act, interest shall be computed till payment at the rate specified in such bond, bill, note or other instrument of writing.

"Section 3. In all cases other than those provided for in the first and second sections of this act, when money shall become due and payable upon any bond, bill, note or other instrument of writing, bearing date after the passage of this act, upon any book account or settlement hereafter made between parties upon all verbal contracts hereafter entered into, and upon all judgments, decrees and orders of any judicial tribunal for the payment of money arising out of any contract made or other transaction occurring after the passage of this act, the creditor or creditors shall be entitled to interest at the rate of six per cent. per annum, and no more. * * *"

The next enactment appears in the Revised Statutes of 1880, page 824, Section 3182, as follows:

"All creditors shall be entitled to collect and receive

interest on all bonds, bills, notes, and other written instruments heretofore entered into, upon all balances struck on settlements heretofore made, upon book accounts heretofore accrued, upon all verbal contracts heretofore made, and upon all judgments, decrees, and orders of courts heretofore rendered, precisely as if this chapter had not passed.''

The last enactment is the present Section 8305, General Code, which provides as follows:

''In cases other than those provided for in the next two preceding sections, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, or settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of a contract, or other transaction, the creditor shall be entitled to interest at the rate of six per cent per annum, and no more.''

From the foregoing legislation it seems to be properly deducible that it was the intention of the Legislature to limit the payment of interest upon judgments to the period from and after the date of the entry of the judgment. Examination of Section 8305, General Code, reveals that said statute in terms is predicated upon the provision ''when money becomes due and payable upon * * * judgments * * *.''

Immediately the question arises: When does money become due and payable upon a judgment?

Certainly not with the return of the verdict, for the verdict does not become a judgment until transmuted by the entry of judgment upon the journal of the court. A verdict is not a judgment, and this section of the statute is ominously silent as to the allowance of interest upon verdicts.

We are fully aware of the contrariety of views held and expressed by the courts of our own state, as well

as those of the courts of other states, upon the subject under consideration. As demonstrative of the diversity of holdings in this state the decisions cited as follows are of interest: *State, ex rel. Crapo,* v. *Parker, Treas.,* 2 C. C. (N. S.), 38, 15 C. D., 237; *American Gypsum Co.* v. *Lake Shore & Michigan S. Ry. Co.,* 7 Ohio App., 145; *Daly* v. *Savage,* 27 Ohio App., 133, 160 N. E., 881; *Chupka* v. *Oshust,* 27 Ohio Law Abs., 351; and *Smith, Admx.,* v. *Miller,* 61 Ohio App., 514, 22 N. E. (2d), 846.

However, we are of the opinion that this question has been settled by the reasoning contained in the opinion of Matthias, J., in the case of *Cleveland Ry. Co.* v. *Williams,* 115 Ohio St., 584, 155 N. E., 133.

In that case the question involved was the liability of a defendant to pay interest, upon the amount of the verdict returned in a personal injury action, from the first day of the term in which the verdict was returned to the date of the return of the verdict, interest having been paid thereon from the date of the verdict to the date of payment of the judgment.

In determining that the defendant was not liable for payment of interest for the period claimed, the writer of the opinion, after quoting Section 8305, General Code, stated: "When does money become due and payable upon a judgment? Certainly not prior to the date of the rendition of the judgment." Further: "The statute providing for interest upon all judgments, in the absence of which interest was not authorized, cannot be regarded as creating a right to interest upon a judgment prior to the time such judgment came into existence. * * * We deem it unnecessary, however, to look further than the provisions of our own statute to reach the conclusion that interest cannot be computed upon the amount found due for any period prior to the date of the ascertainment of the amount due *and the rendition of the judgment* thereon." (Italics ours.)

The foregoing statements, together with the absence of any mention of "verdicts" in the present statute (Section 8305, General Code), we believe justifies the conclusion that it was the opinion of the Supreme Court that the Legislature did not intend to include "verdicts" in wrongful death cases within the category of those obligations upon which interest should be allowed.

It follows that the judgment of the Court of Common Pleas allowing to plaintiff interest upon the amount of the verdict from the date of the return thereof by the jury must be reversed, and judgment entered in favor of defendant (appellant).

*Judgment reversed and*
*final judgment for appellant.*

DOYLE, P. J., and WASHBURN, J., concur.