**SHAPIRO, Plaintiff-Appellant, v. KILGORE CLEANING AND STORAGE COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24676.   Decided March 16, 1959.

506

(DOYLE, PJ, HUNSICKER, J, of the Ninth District, RADCLIFF, J, of the Fourth District, sitting by designation in the Eighth District.)

Samuel T. Gaines, Howard A. Marken, for plaintiff-appellant.
Arter, Hadden, Wykoff & Van Duzer, for defendant-appellee.

## OPINION

By DOYLE, PJ.

This case originated in the Common Pleas Court of Cuyahoga County, and was commenced by Ezra Z. Shapiro, a practicing lawyer of the city of Cleveland, against the Kilgore Cleaning and Storage Company, to recover damages for serious personal injuries received by him through the claimed negligence of one Ralph Herdman, an employee of the defendant company.

Upon the issues developed by the pleadings and the evidence, a jury rendered a verdict for the defendant. A motion for a new trial was overruled, and judgment was entered on the verdict. The appeal by the plaintiff to this court is taken from this judgment.

A head-on collision between two automobiles, one driven by the plaintiff, and the other driven by defendant's employee, was the mischief which brought about the hurt.

The plaintiff testified: that he left his home at about 8:30 in the morning, and drove his automobile west on North Park Boulevard; and that, as he approached a point "three or four car lengths east of the intersection of South Overlook and North Park Boulevard," while driving on the "right-hand side of the road" and with the "left side of my car * * * three to five feet * * * north of the center line * * *, all of a sudden I saw a car which had been coming in the opposite direction, coming east up the hill, shoot straight at me, coming across the center line and crossing the bulge of the curve at that point, and it struck my car on the left front side * * *, it threw me forward and to the right and my right chest struck the right center of the wheel, turning the wheel to the left, and then my car began to roll forward down the hill and the other car began to roll backwards down the hill in front of me, and we rolled a car length and a half or so until we both came to a stop and we were about five feet apart at that point."

The record then shows the following:

"Q. What part of your automobile was struck?

"A. The left front part of my automobile was struck.

"Q. What part of the other car was involved?

"A. The left front part of their car was similarly involved."

The driver of the defendant's car testified to an entirely opposite set of circumstances at and near the time of the collision. He said (in answer to a previous question):

"I was driving out North Park Boulevard and I came * * * close to the intersection of South Overlook and I * * * (saw) Mr. Shapiro's car

up ahead and after it got maybe four car lengths from me he seemed to come right straight across the road, across the center line.

"Q. Now, when you first saw Mr. Shapiro's car, approximately how far ahead of you was it?

"A. Approximately seventy-five yards. * * *

"Q. At the time you first saw his car, how fast was your car going approximately?

"A. 25 (m. p. h.).

"Q. And in what line of traffic was your car proceeding?

"A. I was on the right-hand lane.

"Q. Well, were you nearer to the center line or to the curb?

"A. I would say about in the center in my lane, or closer to the curb.

"Q. Now, when you saw Mr. Shapiro's car veering toward you across the center line, what did you do with reference to the operation of your car?

"A. I cut the wheel and hit the brakes.

"Q. Cut the wheel in which direction, sir?

"A. Towards the side of the road.

"Q. That would be towards your right?

"A. Yes."

In addition to the testimony stated above, the record contains the testimony of a police officer who arrived after the accident, and photographs taken shortly after the collision, showing the damaged cars, the highway and its condition, and the plaintiff's car partly on the "wrong" side of the road, and the defendant's car on its "right" side of the highway. The position of the plaintiff's car on its wrong side of the road when it came to rest was explained by the plaintiff's testimony as being brought about as a result of his car rolling forward "down the hill" immediately after the collision, and the defendant's car rolling "backwards down the hill in front of me."

The only eye witnesses to the collision, who testified, were the respective drivers of the cars; and, as a result, it is obvious that the jury was especially concerned with the credibility to be given to the testimony of these persons.

Attention will be first directed to the following claim of error:

"The trial court erred in relation to the misconduct of defendant's counsel in making improper and prejudicial argument to the jury and in failing to grant a new trial because of such argument."

Counsel for the defendant, after giving to the jury in argument his interpretation of the facts, as shown by the evidence, then proceeded to argue the question of the credibility which should be given to the plaintiff's version of the cause of the collision. He said to the jury:

"I am troubled by something in this case that goes far deeper, and with this I am through. I think the facts are perfectly clear that under these pictures Mr. Shapiro's story can't be accurate. I don't accuse him of being deliberately misleading. I think he is mistaken. But as you well know, in the eyes of the public, lawyers do not have the most savory reputation. This goes for me, for Mr. Gaines (Gaines was counsel for the plaintiff), and for all of us. The word "shyster" has a meaning in our language. If a person says that word you know what he is talking

about. Now, ladies and gentlemen, I have nothing against a lawyer coming into court and demanding redress for an injury, but when he is so obviously wrong I confess it makes me sick. Every time a lawyer goes sour in the public prints, every time it happens it is a little harder for my wife to go into the grocery store and do her shopping. They tar us all with the same brush. Please, please, don't tar me with this one * * *."

In rebuttal argument, counsel for plaintiff said:

"I stood here and I listened to this man imply that this Ezra Shapiro was a 'shyster' and I resented it, I resented it with every ounce of energy in my possession, and you ought to resent it. Ezra Shapiro, a former law director of the city of Cleveland, who had the willingness and the candor to come up and tell you his story. How can you ever expect respect for. the profession that you and I chose when you undertake to resort to that sort of innuendo? You will be tarred * * * (the offending counsel was here named). You ought to be tarred. Any man who would demean the profession to the extent to which you have undertaken to demean it today."

Defendant's counsel, after the conclusions of the argument, stated, in open court and to the jury, that he spoke impulsively when he used the word "shyster," and that he did not intend to use the word "with a personal reference to anyone either present or not present."

Blackstone called the jury system "the glory of the English law." Thomas Jefferson, and others of great repute, have recognized it as one of the really great achievements of English and American jurisprudence. The jury system is sometimes spoken of as the "palladium of our liberties."

The system in this country has its champions and its opponents. The jury is, however, considered by the majority as a champion of the popular cause; cherished as a bulwark against oppressive governments; and acclaimed as essential to individual liberty. In this state every person has the right to a fair and impartial jury trial before an impartial jury in a case of the kind now under consideration. The lawyers who participate in the trial are officers of the court and charged with every responsibility connected with that office.

The phrase "fair trial" has a definite meaning; and while a generous latitude should be allowed counsel in arguing the merits of their respective sides, such argument should be decorous, and should not be of such a nature as to impair the impartial administration of justice. If it does thwart an impartial administration of justice, of course it causes an "unfair trial."

"* * * it may be laid down as law, and not merely discretionary, that where the counsel grossly abuses his privilege to the manifest prejudice of the opposite party, it the the duty of the Judge to stop him then and there. And if he fails to do so, and the impropriety is great, it is good ground for a new trial."

Jenkins, Admr. v. N. C. Ore Dressing Co., 65 N. C. 563, at pp. 564-565, cited with approval in **Hayes v. Smith, 62 Oh St 161**, at **p. 187.**

"1. It is not within the privilege of counsel in argument to a jury, to use language calculated to humiliate and degrade the opposite party

in the eyes of the jury * * *, particularly when he has not been impeached."

Coble v. Coble, Admr., 79 N. C. 589, cited with approval in Hayes v. Smith, supra, at p. 186.

The fact that one Cleveland lawyer subtly inferred or insinuated that another lawyer, practicing at the same bar, was dishonest, a pettifogger, and a trickish knave, is sufficient to raise the question whether a fair and impartial jury trial was maintained, and whether the jury was prejudicially influenced in determining the credibility of the witness; and the fact that the insinuating, vicious and slanderous characterization of the lawyer-witness was later withdrawn, leaves the question of whether, once a dagger is thrust through the heart, it can be withdrawn without injury or damage. In other words, can the smear of the word "shyster" be withdrawn and leave the surface clean?

In **Jones v. Macedonia-Northfield Banking Co.**, et al., **132 Oh St 341**, the following paragraphs of the syllabus are recorded:

"1. It is the duty of counsel to refrain from challenging the honor or reputation of a witness, party or opposing counsel unless warranted by the evidence.

"2. Utterances of counsel while evidence is being adduced, whether consisting of comments on the evidence or of offensive and personal remarks, are improper and unethical and, if prejudicial and not waived, constitute reversible error.

"3. Argument to the jury, in which counsel charges opposing parties with framing or fixing up their defense by perjury arranged for or suborned, is improper unless there is evidence warranting the course pursued; and where counsel grossly abuses his privileges by persisting in making such unfounded charges to the manifest prejudice of opposing parties, it is the duty of the court to interfere, admonish offending counsel and instruct the jury to disregard the improper utterances, and a failure to do so is ground for a new trial."

Unwarranted and unjustified charges against a party to a suit was under investigation in **Plas v. Holmes Construction Co., Inc.**, **157 Oh St 95**. The court said, in paragraph 3 of the syllabus, that:

"3. It is the duty of the trial judge to repress unwarranted charges of a scurrilous character and gratuitous personal attacks against a party to a suit in cross-examination and in argument to the jury; and the trial judge should interpose and not only admonish offending counsel and prevent further improper and prejudicial cross-examination and argument to the jury based thereon but should also promptly instruct the jury relative thereto. Failure of the judge so to do constitutes prejudicial error."

There is nothing in the record of the trial to justify an implied character assassination of the plaintiff. He is a man who bears a reputation of integrity. Nor is there anything in the record to indicate that "lawyers do not have the most savory reputation." The members of the bar have the reputation generally, we think, of employing such means as are consistent with truth and honor in maintaining the causes confided to them; of carrying out the oath, which they took upon ad-

mittance to the bar, to not seek to mislead a judge or jury by any artifice or false statement of fact or law, and to abstain from offensive personality; and to advance no fact prejudicial to the honor and reputation of a party or witness unless required by the justice of the cause with which he is charged.

There are, of course, a few in the legal profession who have miserably violated their oath, and do not bear a "most savory reputation." The same is true in all other professions or callings. This fact, however, does no violence to the reputation of the vast majority of the men and women of the profession, to the intelligent person, any more than did the conduct of John Wilkes Booth bear upon the reputation of the people of the South who were in sympathy with the Confederate cause following the Civil War. We further do not believe that an intelligent juror or citizen is influenced in his estimation of a lawyer by the sometimes-silly, stupid or dishonest stunts attributed to lawyers in staged plays shown on television or elsewhere.

We are of the opinion, and so hold, that the inflammatory argument of counsel, from which a strong inference could be reasonably drawn that counsel meant the jury to believe and understand that the reputation of lawyers generally was bad, and that the plaintiff-lawyer-witness was a "shyster," all of which had no basis in fact, constituted prejudicial error; and the court's attempt, in the general charge, to cure the error was of no avail.

In 39 Words and Phrases (Permanent Ed.) 329, appears the following:

"A 'shyster' is defined as a pettifogger, one who carries on legal business in a dishonest way, one without professional honor. Moore v. State, 23 N. W. 2d 552, 557, 147 Neb 390."

"A shyster is defined as a trickish knave; one who carries on any business, especially a legal business, in a dishonest way (Webst.), and is capable of having reference to the professional character and standing of lawyer; and hence in an action for libeling a lawyer by calling him a shyster the issue whether plaintiff is a lawyer is a material one. Gribble v. Pioneer Press Co., 25 N. W. 710, 34 Minn. 342."

"An article headed 'The White-Livered Shyster,' and in its body imputing grossly criminal, anarchistic, and unprofessional conduct to the object of its attack, etc., being written and published concerning a lawyer, held libelous per se under Rev. Codes 1921, Sec. 5690, as exposing him to hatred, contempt, ridicule, and obloquy, causing him to be shunned and avoided, and tending to injure him in his business; a 'shyster' being said to be 'a trickish knave; one who carries on any business, especially a legal business, in a dishonest way.' Nolan v. Standard Pub. Co., 216 P. 571, 574, 67 Mont. 212."

"A 'shyster' as applied to an attorney, in common understanding means that he is an unscrupulous practitioner who will carry on his legal work in a dishonest way and will resort to sharp and tricky practices to achieve his end and purpose. Henderson v. Evansville Press, Inc., 142 N. E. 2d 920, 922."

See also: Black's Law Dictionary (Third Ed.) 1625.

Error of the trial court is further assigned in two respects:

"1. * * * in imposing upon plaintiff the burden of proving that the negligence of the defendant was the sole proximate cause of the collision."

And—

"2. * * * in giving instructions which state conflicting and contradictory rules of law."

The court charged:

"It is the duty of the plaintiff to prove to you by a preponderance of the evidence that the defendant was guilty of negligence in one or more of the particulars set forth in the petition. And he must further prove to you by a preponderance of the evidence that said negligence of the defendant was the sole proximate cause of the collision and consequent injuries to said plaintiff before you may find a verdict for the plaintiff."

At another point the court charged:

"If you, therefore, find, by a preponderance of the evidence, that this collision happened through the sole negligence of the defendant and further find that said negligence was the sole proximate cause of the injuries sustained by the plaintiff, then your verdict must be for the plaintiff."

Following these words to the jury, the court then charged on contributory negligence as follows:

"From this evidence, in case you find the defendant's agent guilty of negligence, you may then consider whether the plaintiff was also negligent, which negligence contributed to proximately cause the collision and consequent injuries to him. This is known as contributory negligence. The burden of proving contributory negligence of the plaintiff is on the defendant. If you find, therefore, by a preponderance of the evidence, that the plaintiff was guilty of negligence, which negligence contributed to proximately cause the collision and injuries to the plaintiff, then your verdict must be for the defendant. In other words, if this collision was caused or contributed to by the negligence of both parties proximately operating, then your verdict must be for the defendant."

When this trial commenced, the presumption of law was that neither of the litigants were negligent, and whether one or the other, or both, were negligent was a question of proof. The proof offered was the testimony of the two contradictory eye witnesses, coupled with physical facts shown to exist after the collision. The jury, in consideration of the evidence, could have found that the negligence of the plaintiff, the negligence of the defendant, or the negligence of both, proximately caused the collision. This thought, it would appear, was in the mind of the trial court when a charge on contributory negligence was given, because contributory negligence on the part of a plaintiff does not come into existence unless there is some proof indicating negligence of the defendant contributing to the damage.

It is well settled in this state that contributory negligence is an affirmative defense which may arise through either the pleadings, the

evidence, or both; and the burden of persuasion to establish it falls upon the party charged with culpable liability.

When the court told the jury that, before the plaintiff could recover, he must prove that the negligence of the defendant was the sole proximate cause of the damage, the jury was told, in effect, that the plaintiff must prove that he was not negligent proximately causing, or contributing to cause, along with the defendant's negligence, the damage. In other words, before he could recover, he must prove his freedom from negligence which caused his damage. No such burden is put upon a plaintiff, except only if his own testimony, or evidence in support of his cause of action, raises an inference or presumption of his own contributory negligence, then the burden rests upon him to equal or dispel such inference or presumption. **Maddex, et al., v. Columber, 114 Oh St 178; Smith v. Lopa, 123 Oh St 213, 174 N. E. 735.**

It is not necessary to equal or dispel a presumption or inference of contributory negligence, arising from the plaintiff's evidence, by a preponderance of the evidence; it is sufficient if the inference or presumption is equalled or dispelled by evidence of equal weight. **Tresise v. Ashdown, Admr., 118 Oh St 307, 316, 160 N. E. 898.**

The plaintiff was entitled to the benefit of the presumption that he was exercising due care for his own safety, and was not negligent as a matter of law at the time of the collision. **Cleveland, C. & C. Rd. Co. v. Crawford, Admr., 24 Oh St 631; Norris, Exrx., v. Jones, Recr., 110 Oh St 598, 604, 114 N. E. 274; Tresise v. Ashdown, Admr., supra; McFadden, Admr., v. Breuer Transportation Co., 156 Oh St 430, 442.**

If, for instance, the minds of the jurors were in a state of even balance as to whether the plaintiff's version of the accident was correct, under the charge which required him to prove, by a preponderance of the evidence, that the defendant's negligence was the sole proximate cause of the damage, he must necessarily fail, because he had not proved that his own negligence was not a proximate cause of the accident. This situation does not comply with the rules of proof.

In a trial where the evidence is in sharp conflict, and an erroneous instruction is given to the jury, relating to the burden of proof, prejudicial error arises in favor of the litigant upon whom the unwarranted burden is placed. **Montanari v. Haworth, 108 Oh St 8, 14; Cleveland Ry. Co. v. Goldman, a minor, 122 Oh St 73; Johnson v. Hunter, 103 Oh Ap 31, affirmed, Johnson v. Hunter, 166 Oh St 289.**

It appears obvious that the charges on "sole proximate cause" and on "contributory negligence," are confusing, conflicting, and contradictory. This creates error. **Bosjnak v. Superior Sheet Steel Co., 145 Oh St 538, 62 N. E. 2d 305.**

For the reasons stated above, the judgment of the Court of Common Pleas will be reversed, and the cause remanded for a new trial.

We do not find the judgment "against the manifest weight of the evidence."

Reversed and remanded.

HUNSICKER and RADCLIFF, JJ, concur.