STRALEY, APPELLANT, *v.* KELTNER ET AL., APPELLEES.

(No. 2507—Decided May 20, 1959.)

*Mr. William M. Hunter* and *Mr. Samuel A. McCray,* for appellant.

*Messrs. Pickrel, Schaeffer & Ebeling* and *Mr. William H. Selva,* for appellee.

WISEMAN, P. J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County entered on a directed verdict in favor of the defendants.

The only error assigned is that the trial court erred in sustaining defendants' motion for a directed verdict at the close of plaintiff's case.

Plaintiff, a tenant in a trailer park, sued the owners and operators of the trailer park to recover damages for personal injuries which she sustained when she allegedly fell on a cement platform which was covered with ice.

The facts may be summarized as follows:

On January 27, 1955, plaintiff, who was subject to fainting spells and dizziness, was the owner of a trailer which she parked at a designated location, for an agreed rental, in defendants' trailer park. As a service and for the use of its patrons, defendants provided a utility building at one end of which was located a concrete platform upon which were placed eight con-

tainers for use by patrons to dispose of garbage. Two days previous to January 27, 1955, snow had fallen, and on the day in question it was slippery and very cold. Plaintiff left her trailer and walked to the utility building and on her way met and talked with Beal, the park maintenance man, who was chipping ice from the sidewalk a few feet from the utility building. Plaintiff walked to the concrete platform and observed that the platform was covered with frost and ice, and that no salt or sand had been thrown upon the ice. Although plaintiff asked Beal why he had not put any salt on the platform, she did not ask him to clear the ice or to put any salt upon the platform before she stepped upon it. After stepping upon the ice covered platform, plaintiff placed her sack of garbage upon the lid covering the container, raised the lid, placed the garbage in the container, lowered the lid and turned to go back, and, according to the testimony of the plaintiff, that is the last thing she remembers. When she regained consciousness she was lying on her back on the ground across the sidewalk with her feet approximately three feet from the end of the concrete platform.

The slippery and dangerous condition of the platform was plainly visible, and the evidence shows that the plaintiff was fully cognizant of such hazardous condition of the platform. There is no direct evidence supporting the claim that plaintiff slipped on the ice; neither is there any direct evidence that plaintiff slipped and fell while using the platform. On direct examination, the plaintiff testified as follows:

"Q. And then what did you do? A. I took hold of that with my hand and stepped upon the platform as I got up there and I laid the sack on the lid and took my left hand and raised the lid and put my sack in. There is a pulley there and it goes down by itself so you don't have to push it down but I kept hold of the wall with my left hand.

"Q. Then what happened? A. I thought I would take hold with my left hand and turned to go back and that is all I remember.

"Q. As you stepped up there, was there any where on this garbage loading platform that was bare concrete? A. No, it was not bare concrete. The ice had been taken off part of it but it had that film-like over it. I don't know whether you

would call it frost or what you would call it after ice and snow is swept off, it is slick and glazy. The ice had been chipped at that end because there were just spots of rough thick ice.

"Q. Was there any sand there at any where? A. No, not that I seen.

"Q. Was there any bare concrete that was solid footing there? A. No sir, there wasn't.

"Q. Can you explain why it was that you deposited your garbage at the point where you did deposit it? A. Because I didn't want to walk any further than I did on the walk and I was going to work and there wasn't any place else to take it and I had to put it there.

"Q. Was there any place less slippery than the place you selected to stand? A. No sir.

"Q. What then happened? A. I fell.

"Q. What do you next remember? A. I was laying out on the ground.

"Q. Can you describe the distance at which you found yourself as best you can, please? A. I was laying out off the sidewalk, northeast, more or less."

On cross-examination, the plaintiff testified as follows:

"Q. And the condition of the slab was apparent to you before you stepped up, that is, this ice and lumpy ice and chipped ice and the frost over it? A. That is right but I had to go up there because we had to take our garbage out and I had no place to put it."

The plaintiff was never asked, either on direct or cross-examination, whether she slipped on the ice or where she was when she fell. No witness testified respecting these matters.

When she was found lying on the ground her feet were the part of her body nearest to the concrete platform, at a distance of about three feet. She has a medical history of having fainted and of dizziness. There is no evidence to the effect that she sustained a head injury when she fell. The defendant contends that the evidence points to the conclusion that plaintiff may have fainted or experienced a dizzy spell, causing her to fall. However, the plaintiff is entitled to have the evidence construed most favorably to her, and she is entitled to the benefit of all reasonable inferences. The jury could reasonably in-

fer that plaintiff slipped on the ice, causing her to fall. Proof of slipping on the ice is not enough to maintain her action. One additional fact is lacking. What was the position of the plaintiff when she fell? In view of the evidence respecting the place where she was found on the ground, the place where she fell is not definite, and there is no direct evidence on this factual issue. In drawing an inference that she fell while using the cement platform, the court would be required to base an inference upon an inference. This is not permitted. 21 Ohio Jurisprudence (2d), 112, Section 106. Being unwilling to rest this case solely on this point of law, which some courts reject and others reluctantly approve, we proceed to discuss and determine the matters on which the trial court relied in directing the verdict, *i. e.*, whether the plaintiff was guilty of negligence and assumed the risk.

The evidence shows that the plaintiff was fully aware of the slippery and dangerous condition of the platform and voluntarily stepped upon it. There is no evidence to the effect that there was a defect in the platform, or that there was an accumulation of ice by reason of the manner of construction of the platform, or that water accumulated thereon. The evidence clearly shows that the slippery condition of the platform was brought about by natural causes. The evidence is to the effect that on the day in question the whole area, including the walks and ground, was covered with ice and was very slippery. It had snowed two days prior to the day in question, but on this particular day no snow had fallen. Walking on the walks, ground, or platform was hazardous.

In *Village of Conneaut* v. *Naef*, 54 Ohio St., 529, 44 N. E., 236, the syllabus is as follows:

"One who goes voluntarily upon an accumulation of ice on a walk of a village cannot maintain an action against such village for a personal injury resulting to him, if the source of danger is plainly visible."

In *City of Norwalk* v. *Tuttle*, 73 Ohio St., 242, 76 N. E., 617, the syllabus is as follows:

"1. A petition filed for the purpose of recovering from a municipality on account of injuries sustained by the plaintiff from falling upon an icy sidewalk, the conditions being solely

due to the action of the elements, but not alleging either a structural defect in the walk or any act of the municipality causing the formation of the ice, does not state a cause of action. (*Chase v. The City of Cleveland*, 44 Ohio St., 505, approved and followed.)

"2. One who voluntarily goes upon a sidewalk of a city which is obviously, and by him known to be, in a dangerous condition, cannot recover on account of injuries which he may thereby sustain, even if the negligence of the city is admitted or shown. (*Schaefler v. The City of Sandusky*, 33 Ohio St., 246, and *The Village of Conneaut v. Naef*, 54 Ohio St., 529, approved and followed.)"

In *Highway Construction Co. v. Sorna*, 122 Ohio St., 258, 171 N. E., 312, although the injury was not due to ice, the court states the general rule as follows:

"1. One using a sidewalk, crosswalk, street or highway, which ordinary and reasonable care would inform him was dangerous, takes the risk of such injuries as may result to him by open and apparent defects, such as his observation ought to have detected and avoided."

In *Turoff v. Richman*, 76 Ohio App., 83, 61 N. E. (2d), 486, where a tenant sued the landlords for damages for personal injuries suffered when she fell on the ice on a driveway, the syllabus is as follows:

"1. Where the owner of private property creates no greater danger than is brought about by natural causes, his tenants must assume the burden of protecting themselves from the dangers that are created by the elements, such as forming of ice and falling of snow, which are universally known, unless such owner has contracted with his tenants to provide against such dangers.

"2. A tenant, suffering personal injury as the result of a fall caused by slipping on an accumulation of ice and snow upon a driveway on his landlord's premises used by all his tenants, does not have a cause of action against the landlord based on the theory that the latter was negligent in failing to remove from such driveway ice and snow that had accumulated from natural causes."

The court on page 86 discusses the principles of law applicable to liability of an abutting property owner for injuries

resulting from a fall on an icy sidewalk, and applied, as follows, the same principle of law in determining the liability of a private owner:

"Should there be a different rule applied to the owner of private property where such owner by operation of law or because of contractual obligations is under the legal duty to maintain his property in a reasonably safe condition for the benefit of others lawfully upon the property? We think not. In cases where there is no act on the part of the landlord creating a greater danger than was brought about by natural causes, the dangers that are created by the elements, such as forming of ice and the falling of snow, are universally known and, unless the landlord has contracted to provide against these dangers, all persons on his property must assume the burden of protecting themselves therefrom.

"This rule, which is sustained by the greater weight of authority, is stated as follows in 25 A. L. R., 1301:

" 'Ordinarily, the landlord of premises leased to different tenants, who use in common the approaches thereto, and the halls and stairways, is not liable for accumulations of snow and ice due to natural causes, and hence is not liable for injuries to persons using these portions of the premises, due to accumulations of this character.' "

Also, assuming without deciding that the defendant was negligent, the plaintiff is confronted with a well established rule that, if the plaintiff's evidence raises an inference of negligence on the part of the plaintiff, directly and proximately contributing to the injury, the burden is on the plaintiff to dispel and counterbalance such inference. *Ziebro, Admx.,* v. *City of Cleveland,* 157 Ohio St., 489, 106 N. E. (2d), 161. On this issue the plaintiff failed.

The case of *Oswald* v. *Jeraj,* 146 Ohio St., 676, 67 N. E. (2d), 779, is distinguishable from the instant case on the facts. In that case the ice was hidden, being covered with snow. This condition did not obtain in the case at bar.

Contributory negligence and assumption of risk may coexist in the same case. *Centrello, a Minor,* v. *Basky,* 164 Ohio St., 41, 128 N. E. (2d), 80.

The trial court held that the plaintiff was guilty of neg-

ligence proximately contributing to her injury and assumed the risk by stepping on the ice which she saw and knew to be in a slippery and dangerous condition, a conclusion with which we agree.

As we find no error in the record prejudicial to the plaintiff in the directing of a verdict for the defendants, the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

CRAWFORD and KERNS, JJ., concur.