**NEW YORK CENTRAL RAILROAD COMPANY, of Albany, New York, Plaintiff,**

**v.**

**Grace MONROE, of Bethany, Connecticut, Louis J. Galullo, as Administrator of the Estate of Bronis Klimasauskas, of 130 Peach Orchard Road, Waterbury, Connecticut, Defendants.**

United States District Court
S. D. New York.
Nov. 18, 1960.

Gerald E. Dwyer, New York City, for plaintiff, C. Austin White, New York City, of counsel.

Levine & Baker, New York City, for defendants, Samuel Baker, Laurence Feldman, New York City, Charles E. O'Connor, Waterbury, Conn., of counsel.

LEVET, District Judge.

The New York Central Railroad Company sues to recover for damages sustained by its engines, tracks, etc., in a grade crossing collision. Grace Monroe and Bronis Klimasauskas were the owners of a certain tractor vehicle and trailer which collided with the plaintiff's train at a grade crossing in Edgerton, Ohio, on May 23, 1953.

The complaint was originally filed in the District Court of the United States for the District of Connecticut from which the case was transferred to the Southern District of New York. On this action no jury trial was demanded.

Subsequent to the institution of this suit, the defendants in this action instituted a suit in the Supreme Court of the State of New York, County of New York, against the present plaintiff, New York Central Railroad Company, based in general upon the death of Bronis Klimasauskas and injuries to his then wife, Grace Klimasauskas, now Grace Monroe. The action was removed to this court upon motion of the defendant railroad company, and a jury trial had. The question of liability was separately tried. On November 4, 1960, the jury rendered

a verdict in favor of the defendant railroad company.

The present action was heard by the court upon the evidence submitted in the jury action, and upon certain additional testimony relating to the question of the railroad's claim for damages.

The court, having heard the testimony and taken the evidence of the parties, and due deliberation having been had, makes the following Findings of Fact and Conclusions of Law:

## Findings of Fact

(1) The plaintiff is a corporation organized and existing pursuant to the laws of the State of New York, with a principal place of business in Albany, New York. The defendant Grace Monroe is a citizen of the State of Connecticut and resides at Bethany, Connecticut, and the defendant Louis J. Galullo is a citizen of the State of Connecticut, residing at Waterbury, Connecticut. Thus diversity of citizenship sufficient to give jurisdiction exists.

(2) On or about May 23, 1953, the defendant Grace Monroe, then known as Grace Klimasauskas, was the wife of Bronis Klimasauskas, now deceased.

(3) The said Bronis Klimasauskas died on or about May 23, 1953.

(4) The defendant Louis J. Galullo thereafter and prior to the institution of this action, was duly appointed the administrator of the estate of said Bronis Klimasauskas by the Probate Court of the District of Waterbury, Connecticut.

(5) On said May 23, 1953, the said Bronis Klimasauskas was the owner of a tractor vehicle, Connecticut license No. 74–982, for the year 1953, and the said Grace Klimasauskas Monroe was the owner of a certain trailer, Illinois license No. ST 70267, for the year 1953, which vehicles were being jointly used and operated by said Grace Monroe and said Bronis Klimasauskas, as hereinafter appears.

(6) The said trailer was 32 feet in length. Together with the tractor, the length of the vehicle was approximately 50 feet. The tractor had four low gears forward and one in reverse, and four high gears forward and one in reverse. Trailer and tractor were equipped with air brakes. The trailer carried a 32,000 pound load of frozen hams.

(7) On May 23, 1953, at about 2:00 A.M., the defendant Grace Klimasauskas Monroe and the said Bronis Klimasauskas, by means of said tractor and trailer, were engaged in interstate commerce in the transportation of a load of hams on U. S. Route 6 in the Town of Edgerton, State of Ohio, bound from the State of Illinois to the State of Massachusetts.

(8) Bronis Klimasauskas at the time of the accident was driving the vehicle, but was assisted by his wife, Grace Klimasauskas Monroe, who drove at times and aided her husband in looking for traffic, trains, etc., at special points. Both husband and wife owned and operated the trailer-tractor, and shared the profits derived from the transportation device utilized in interstate commerce as aforesaid.

(9) The trailer-truck, driven alternately by Grace and Bronis Klimasauskas, had left Chicago the night before at about 6:00–7:00 P.M., and had followed U. S. Route 6, traveling parallel to plaintiff's railroad tracks to a point where said Route 6 intersects Michigan Street in the Town of Edgerton, Ohio, and there turned right to cross the railroad tracks.

(10) At the date and time above mentioned, said U. S. Route 6 ran in a general easterly and westerly direction, parallel to a four-track railroad owned by the plaintiff upon which one of its freight trains was then being operated.

(11) At that time, said U. S. Route 6, in the Town of Edgerton, Ohio, intersected Michigan Street, also known as Ohio Route 49. Route 49, or Michigan Street, traversed plaintiff's railroad tracks at a grade crossing located some 40 or more feet south of said intersection of U. S. Route 6 and Michigan Street.

(12) The usual "Stop, Look & Listen" signs were posted on Michigan Street, in

the middle thereof just north and south of the railroad crossing, it appearing that the railroad had thereby complied with Section 8852 of the Ohio Code, then in effect. Section 8852 is as follows:

"At all points where its road crosses a public road at a common grade, each company shall erect a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive. A company which neglects or refuses to comply with this provision shall be liable in damages for all injuries which occur to persons or property from such neglect or refusal."

(13) The plaintiff railroad had erected automatic flashing red signals under the warning signs, which operated on both sides of the crossing. Testimony of the plaintiff's engineer, fireman and head brakeman indicates that these signals were functioning at the time above mentioned, and I so find.

(14) The plaintiff's train, which was traveling at about 50 miles per hour just before the impact, consisted of about 80–90 freight cars. The engineer saw the defendants' vehicle perhaps some 300–350 feet from the grade crossing traveling on said U. S. Route 6 when the train was perhaps 1,000 feet from the crossing. Only when the lead engine (in which the engineer was riding) was some 50 feet from the crossing, did it appear to the train engineer that the trailer-truck was not stopping, but, rather, was proceeding to cross the tracks.

(15) About a quarter of a mile from the crossing was situated a so-called whistling post, from which point the engineer started and continued to pull the train whistle or horn; the train's engine bell was also ringing for probably a mile; the headlight on the engine was likewise functioning.

(16) The vicinity of Edgerton, Ohio, was quiet, the motor of defendants' vehicle, only a month old, was not noisy. The street lights of the town were bright, and there was a flashing stop light as well as a "Stop" sign maintained at the intersection of U. S. Route 6 and Michigan Street. The railroad tracks ran on a comparatively level bed. There were no track curves in the immediate area and no obstructions blocking a motorist's view of the tracks in either direction at said grade crossing.

(17) At the above mentioned time and place, Grace Monroe and Bronis Klimasauskas caused the said trailer-tractor unit to be turned in a southerly direction from U. S. Route 6 into said Michigan Street and into the path of plaintiff's train at said grade crossing, thereby causing a collision which resulted in losses and damages to the plaintiff as hereinafter set forth.

(18) The said collision and the resulting losses and damages to plaintiff were caused by the fault, imprudence, recklessness, carelessness and negligence of the defendant Grace Monroe and the said Bronis Klimasauskas in that:

a. They failed to keep and maintain a reasonable and proper lookout for the said train of the plaintiff at said grade crossing.

b. They failed to heed the signals and warnings located at said grade crossing.

c. They failed to grant plaintiff's train the right of way.

d. They drove said trailer-truck upon and over such crossing before due caution had been taken to ascertain that the course was clear.

e. They failed to give any signal or warning of their approach or intention to turn at said intersection into the path of the plaintiff's train.

f. They operated the said tractor-trailer unit recklessly under the existing conditions and circumstances.

g. They failed to look and listen before going upon the tracks, to look and listen for the approach of trains at such

a time and place and in such a manner as to effectively discover whether a train was about to pass over such crossing.

h. They changed gears or started to change gears in said tractor vehicle while traversing such crossing.

■ (19) As a consequence of the said acts of the defendant Grace Monroe and the said Bronis Klimasauskas, the plaintiff suffered damages to locomotives Nos. 1660, 2452 and 1851 and to its tracks and crossing and signal apparatus, being put to an expense of repairing the same to the sum of $5,057.12.

## Discussion

The relevant sections of the Ohio Code in effect at the time of the accident on May 23, 1953, were as follows:

Section 8852 provides:

"At all points where its road crosses a public road at a common grade, each company shall erect a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive. A company which neglects or refuses to comply with this provision shall be liable in damages for all injuries which occur to persons or property from such neglect or refusal."

Section 8853 reads as follows:

"§ 8853. Bell and whistle on locomotive engine, when and how operated.

"Every company shall attach to each locomotive engine passing upon its road, a bell of the ordinary size in use on such engines, and a steam or compressed air whistle. When an engine in motion and approaching a turnpike, highway or town road crossing or private crossing where the view of such crossing is obstructed by embankment, trees, curve or other obstruction to view, upon the same line therewith, and in like manner where the road crosses any other traveled place, by bridge or otherwise, the engineer or person in charge thereof, shall sound such whistle at a distance of at least eighty and not further than one hundred rods from such crossing, and ring such bell continuously until the engine passes the crossing."

Other rules affecting the operation of the defendants' trailer-truck were as follows:

Rule 13 of the Ohio Public Utility Safety Rules for Owners, Operators and Truck Drivers, provides in part:

"13. Railroad Crossings and Drawbridges

The driver, upon approaching railroad crossings, shall reduce speed to a rate that shall enable a stop to be made before reaching the nearest rail of such crossing, and shall proceed to cross only after due caution has been taken to ascertain that the crossing is clear. Crossing shall be made only in such gear that there shall be no necessity for changing gears while traversing such crossing."

I.C.C. Motor Carrier Safety Regulations, Section 192.11 (49 CFR 192.11) provides:

"Every motor vehicle * * * shall, upon approaching a railroad grade crossing, be driven at a rate of speed which will permit said motor vehicle to be stopped before reaching the nearest rail of such crossing and shall not be driven upon or over such crossing until due caution has been taken to ascertain that the course is clear."

■■ When a motorist upon a public highway intends to use a railroad grade crossing at night, it becomes his duty before going upon the tracks to look and listen for the approach of trains at such time and place and in such manner as will be effective to accomplish the ends designed thereby. Detroit, Toledo & Ironton R. Co. v. Rohrs, 1926, 114 Ohio St. 493, 151 N.E. 714; see also Pennsylvania R. Co. v. Rusynik, 1927,

117 Ohio St. 530, 159 N.E. 826, 828, 56 A.L.R. 538. Thus, such a driver is under a definite duty to exercise his senses of sight and hearing to discover whether trains are about to pass over such crossing, and this observation must be made at such time and place as to be effective to apprise him whether danger is near or not. Patton v. Pennsylvania R. Co., 1939, 136 Ohio St. 159, 24 N.E.2d 597; see also Detroit, Toledo & Ironton R. Co. v. Rohrs, supra; Price v. New York Cent. System, D.C.N.D.OhioE.D.1950, 91 F.Supp. 898, 900.

If, having full possession of his faculties, the motorist fails to see or hear anything when a prudent person, exercising his eyes and ears, with ordinary care, would have discovered a train in close proximity, and said motorist is thereby injured, he is guilty of negligence on his own part as will prevent a recovery. Toledo Terminal R. Co. v. Hughes, 1926, 115 Ohio St. 562, 154 N.E. 916, 918; Cleveland, C. C. & I. Ry. Co. v. Elliott, 1876, 28 Ohio St. 340, 341. See also Danis v. New York Cent. R. Co., Ohio App.1951, 106 N.E.2d 308, 309; Lang v. Pennsylvania R. R. Co., 1938, 59 Ohio App. 345, 18 N.E.2d 271, 274.

A motorist approaching a railroad crossing at which automatic warning signals are maintained, while entitled to place some reliance upon the indication of safety which the silence or inaction of such signals implies, is, nevertheless, bound to exercise in addition such care as an ordinarily prudent man would use under similar circumstances. Toledo Terminal R. Co. v. Hughes, 1926, 115 Ohio St. 562, 154 N.E. 916, 919; Trushel v. New York Central R. Co., 1956, 109 Ohio App. 197, 164 N.E.2d 780, 787. He thus does not have the right to rely entirely or solely on such automatic signal devices for his safety, but is still bound to use reasonable and prudent care under the circumstances. See also Columbus, Delaware & Marion Electric Co. v. O'Day, 1930, 123 Ohio St. 638, 176 N.E. 569, 570; Danis v. New York Cent. R. Co., Ohio App.1951, 106 N.E.2d 308, 310–313; Eastern Motor Dispatch, Inc.

v. Pennsylvania R. Co., 1947, 82 Ohio App. 428, 77 N.E.2d 275, 277–278.

The law recognizes that ordinarily, due to unavoidable circumstances, railroad companies cannot be responsible for grade crossing collisions in the operation of their fast-moving trains, the burden of avoiding such collisions thus resting, for the most part, upon the operators of vehicles using such crossings. Woodworth v. New York Cent. R. Co., 1948, 149 Ohio St. 543, 80 N.E.2d 142, 146. Railroad trains, confined as they are to fixed tracks in their operation, and considering their weight and momentum, cannot be readily stopped within a short distance or interval of time. Ibid. Where tracks at crossings are inadequately maintained as to cause a vehicle crossing them to break down or be impeded, or if a driver is deceived by the signals of a crossing watchman or otherwise misled by railroad operation, a different rule would, of course, apply. Woodworth v. New York Cent. R. Co., supra.

Negligence cannot be predicated solely on the fact that the railroad's engineer did not apply the train's brakes in time to stop, before reaching the crossing, so as to avoid colliding with the defendants' tractor-trailer. See Cincinnati Transit Co. v. Baltimore & Ohio R. R. Co., 1959, 109 Ohio App. 374, 160 N.E.2d 150, 152.

A railroad engineer should not be obliged to commence halting his train until it is reasonably apparent that an object on the tracks before it is not going to remove itself and is in obvious peril. As Judge Holtzoff observed in Miller v. Pennsylvania Railroad Co., D.C. D.C.1958, 161 F.Supp. 633, 645:

"* * * Moreover, it would be unreasonable for a jury to find that whenever a train engineer observes a vehicle at an intersection some distance away, he has no right to assume that it is moving and will clear the crossing in due time, but must slow down and even bring the train to a stop. Modern railroading

would be impracticable and train schedules could not be maintained if such a practice were imposed on the operation of trains. There is no evidence that it is the standard or the customary practice."

Moreover, if the brakes are applied when it becomes reasonably apparent that a peril exists, but the circumstances are such that a stop cannot be made in time to avoid a collision, this fact alone does not indicate any negligence on the part of the railroad. See Cincinnati Transit Co. v. Baltimore & Ohio R. R. Co., supra, 160 N.E.2d at page 152.

Paragraph 6 of the Ohio Supreme Court's syllabus in New York, C. & St. L. R. Co. v. Kistler, 1902, 66 Ohio St. 326, 64 N.E. 130, reads as follows:

"It is the duty of a locomotive engineer to keep a lookout on the track ahead of the train. If, while so doing, his eye takes in a person approaching the track, he may assume that such person will keep away from the track until the train passes, but when it becomes evident that such person will not keep off the track it becomes the duty of such engineer to use ordinary care to prevent injury to such person; his first and highest duty, however, being for the safety of the passengers and property in his charge for transportation."

The court declared in its opinion:

"When the fireman and brakeman saw her driving toward the crossing they had a right to rely that she would use due care and not go upon the crossing, and it was only when it became evident that she was going upon the crossing that the duty devolved upon them to notify the engineer, and if there was then time to save her she should have been saved, but if it was then too late to save her the injury was, as to the railroad company, an inevitable accident, and for such there can be no recovery. If, on her part, it was a race to beat the train over the crossing, the injury was her own fault and there could be no recovery." 64 N.E. at page 134.

As road crossings can be found in the country every few miles, it is inconsistent with proper speed of transportation that trains should slack up for such crossings. New York, C. & St. L. R. Co. v. Kistler, supra, 64 N.E at page 132. Safety is secured to persons at such a crossing by the observance of statutory signals, and, such signals being given, the train ordinarily is not limited as to speed. See Baltimore & O. R. Co. v. Reeves, 6 Cir., 1926, 10 F.2d 329, 331. High speed, absent legislation, is not per se evidence of negligence. Horn v. Baltimore & O. R. Co., 6 Cir., 1893, 54 F. 301, 303; Bailey v. Erie Railroad Co., D.C.N.D.Ohio E.D.1956, 143 F.Supp. 351, 354.

Yet, compliance with statutory requirements does not necessarily end the duty of the railroad. For, in addition, it remains the duty of a railroad to perform any other acts or take any other precautions reasonably required by the circumstances of the situation and dictated by the rules of ordinary care and diligence. Erie R. Co. v. Weinstein, 6 Cir., 1909, 166 F. 271, 274; Franklin v. Nowak, 1935, 53 Ohio App. 44, 4 N.E.2d 232, 236.

Under Ohio law, negligence is not presumed, but, rather, there is an inference or presumption of due care. Biery v. Pennsylvania R. Co., 1951, 156 Ohio St. 75, 99 N.E.2d 895; Bush v. Harvey Transfer Co., 1946, 146 Ohio St. 657, 67 N.E.2d 851, 852. This rule casts the burden of proving negligence upon the party so charging it. Irwin v. Albers Super Markets, Inc., Ohio App.1950, 108 N.E.2d 356, 357. The plaintiff here must, therefore, prove by a fair preponderance of all the credible evidence that the defendants were negligent and that such negligence was a proximate or direct cause of the collision in question. See Boles v. Montgomery Ward & Co.,

1950, 153 Ohio St. 381, 92 N.E.2d 9, 13; Clifton v. Holliday, 1949, 85 Ohio App. 229, 88 N.E.2d 304, 307.

▮▮▮ The burden of proving contributory negligence on the part of the plaintiff railroad company thus rests upon the defendants, Irwin v. Albers Super Markets, Inc., supra, 108 N.E.2d at page 358, and they would have to prove such contributory negligence by a fair preponderance of the evidence, see Bickley v. Sears, Roebuck & Co., 1938, 62 Ohio App. 180, 23 N.E.2d 505, 506. However, if the plaintiff's evidence itself raises an inference of negligence on its part, then the burden would be on the plaintiff to counterbalance or dispel such inference in order to recover, Ziebro v. City of Cleveland, 1952, 157 Ohio St. 489, 106 N.E.2d 161; Straley v. Keltner, 1959, 109 Ohio App. 51, 164 N.E.2d 186, 190, by offering evidence of equal weight, Tresise v. Ashdown, 1928, 118 Ohio St. 307, 160 N.E. 898, 900, 58 A.L.R. 1476; Shapiro v. Kilgore Cleaning & Storage Co., 1959, 108 Ohio App. 402, 156 N.E. 2d 866, 872.

In this case, after evaluating the evidence, I find that the plaintiff railroad's testimony raises no inferable negligence on its part. Consequently, the burden remains upon the defendants to prove by a fair preponderance of the credible evidence that plaintiff's own negligence was a proximate cause of the collision. This they have failed to do.

On the other hand, the negligence of defendants here appears to have brought about the unfortunate catastrophe. If the defendants had looked, they should have seen plaintiff's oncoming train; if they had listened, they should have heard its approach. They knew the length of their vehicle, and if they had seen or heard the train, should have realized the time necessary in order to cross the tracks safely. The defendants presumably knew the general nature of the railroad tracks, since they had previously traveled in this area. There were no curves, no obstruction of the view at the crossing. The crossing of the tracks and the attempted shifting of gears were not executed by the defendants in a manner free from negligence.

I am thereby constrained to hold the defendants negligent, and to conclude that they have not proved plaintiff contributorily negligent with respect to any proximate cause of the collision.

The plaintiff is entitled to recover.

Conclusions of Law

1. This court has jurisdiction of the parties and the matter in controversy.

2. The defendants were negligent and, as a proximate result of such negligence, the plaintiff suffered damage in the sum of $5,057.12.

3. The plaintiff was free from contributory negligence.

4. The plaintiff is entitled to judgment for $5,057.12 and costs.

▮▮▮ Under Ohio law, which is applicable in this case, the payment of interest upon a judgment is limited to the period from and after the entry of judgment. Cleveland Ry. Co. v. Williams, 1926, 115 Ohio St. 584, 155 N.E. 133; Coulter v. General Fireproofing Co., 1941, 67 Ohio App. 71, 35 N.E.2d 1003. See also Ohio Rev.Code, ch. 1309, § 1309.03 (1958); Carle v. Courtright, 1941, 69 Ohio App. 69, 40 N.E.2d 431, 434, 43 N.E.2d 296; Tipple v. High Street Hotel Co., 1941, 70 Ohio App. 397, 41 N.E.2d 879, 886. Plaintiff is, therefore, not entitled to an award of interest on its property damage claim.

Defendants may obtain a stay of execution upon the judgment in this case by filing a notice of appeal and giving a supersedeas bond pursuant to Rules 62 (d) and 73(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Let judgment be entered accordingly.